In re Steven P. THOMAS, and Thomas Properties, Inc., Plaintiffs

v.

FEDERAL DEPOSIT INSURANCE COR-PORATION, in its capacity as receiver of New Frontier Bank; The Bridges Country Club, Inc.; The Bridges Golf & Country Club; Clinton Blum, personal representative of Estate of D.L. Day Jr., a/k/a Larry Day, Jr., a/k/a Delbert L. Day; Black Canyon Golf, LLLP; Brown Financial LLC; Weslin, LLC; Keenan's Industries, Inc.; RJ's Painting, LLC; Ridgway Valley Enterprises, LLC; John Prater, as personal representative for the Estate of James L. Lear; ASAP Rental Sales of Leadville, Inc.; United Rentals Northwest; Robert Beisen-Herz; Downey Excavation, Inc.; Patrik Davis Associates, P.C.; Chuck's Glass, Inc.; Buckhorn Geotech, Inc.; The Bridges at Black Canyon, Inc.; North-star Bridges, LLC; Leslie Buttorff; Judy Pfountz; MPI/DBS Colorado/Tex-as LLLP, d/b/a Foothills Lighting & Supply; Richard P. Chulick, as receiver

in Montrose District Court Case 07CV49; Rosemary Murphy, as the public trustee of Montrose County, Colorado; First City Corp.; and All Unknown Persons who Claim any interest in the Subject Matter of this Action., Defendants.

No. 10SA234.

Supreme Court of Colorado, En Banc.

June 6, 2011.

Cashen, Cheney & Thomas, Robert J. Thomas, Montrose, Colorado, Attorney for Plaintiffs.

Dufford & Brown, P.C., David W. Furgason, Christian D. Hammond, Denver, Colorado, Attorneys for Defendant Federal Deposit Insurance Corporation.

No Appearance for Defendants The Bridges Country Club, Inc.; The Bridges Golf & Country Club; Clinton Blum, personal representative of Estate of D.L. Day Jr., a/k/a Larry Day, Jr., a/k/a Delbert L. Day; Black Canyon Golf, LLLP; Brown Financial LLC; Weslin, LLC; Keenan's Industries, Inc.; RJ's Painting, LLC; Ridgway Valley Enterprises, LLC; John Prater, as personal representative for the Estate of James L. Lear; ASAP Rental Sales of Leadville, Inc.; United Rentals Northwest; Robert Beisen–Herz; Downey Excavation, Inc.; Patrik Davis Associates, P.C.; Chuck's Glass, Inc.; Buckhorn Geotech, Inc.; The Bridges at Black Canyon, Inc.; Northstar Bridges, LLC; Leslie Buttorff; Judy Pfountz; MPI/DBS Colorado/Texas LLLP, d/b/a Foothills Lighting & Supply; Richard P. Chulick, as receiver in Montrose District Court Case 07CV49; Rosemary Murphy, as the public trustee of Montrose County, Colorado; First City Corp.; and All Unknown Persons who Claim any interest in the Subject Matter of this Action.

Justice MÁRQUEZ delivered the Opinion of the Court.

In this original proceeding, we address whether a state court retains jurisdiction over claims brought against a bank that later enters receivership, where the claimant fails to exhaust the administrative remedies of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), Pub.L. No. 101–73, 103 Stat. 183 (1989) (codified as amended in scattered sections of 12 U.S.C.).[1]

Plaintiffs Steven P. Thomas and Thomas Properties, Inc. (collectively, "Thomas") brought contract-related claims against New Frontier Bank, which later was placed in receivership. Defendant Federal Deposit Insurance Corporation ("FDIC"), in its capacity as receiver of New Frontier Bank, moved to dismiss Thomas's claims under C.R.C.P. 12(b)(1) for lack of subject matter jurisdiction, citing Thomas's failure to exhaust the administrative claims review process established by Congress under FIRREA. The trial court denied the motion, and the FDIC now seeks review under C.A.R. 21. We issued a rule to show cause to Plaintiffs to review the trial court's order.

We construe the provisions of FIRREA to limit the jurisdiction of courts to review claims involving failed financial institutions that have entered receivership. Under the Act, litigants who have an action pending against a bank that is later placed in receivership must pursue the administrative claims process under FIRREA in order thereafter to continue the action against the receiver. Congress has made clear that if a claimant fails to exhaust the administrative claims process, "no court shall have jurisdiction" over any claim or action seeking a determination of rights against the receiver. 12 U.S.C. § 1821(d)(13)(D).

We therefore hold that where, as here, a claimant has received proper notice of the required administrative claims procedures under FIRREA, yet fails to exhaust those administrative remedies, the Act precludes any court from continuing to exercise jurisdiction over pre-receivership claims filed against the failed bank. Accordingly, we make the rule absolute and remand the matter to the trial court with directions to dismiss Thomas's claims against the FDIC for lack of subject matter jurisdiction.

## I. Facts and Procedural History

Thomas purchased a 40–acre tract of land adjacent to a golf course in the City of Montrose, intending to create a residential development on the property. In August 2006, Thomas entered into an agreement with The Bridges Country Club, Inc. to purchase golf memberships and other club privileges at The Bridges Golf & Country Club and associated facilities adjacent to Thomas's property. Under the agreement, Thomas paid $500,000 in exchange for the right to allocate different levels of club memberships to future lot owners on his residential development.

D.L. Day, Jr. signed the agreement on behalf of The Bridges Country Club, Inc. Day operated and served as an officer/board member for several business entities, includ-

---

1. The sections of the Act relevant to our discussion here are codified at 12 U.S.C. § 1821(d).

ing Black Canyon Golf, LLLP, which owned or operated certain club facilities identified in the agreement with Thomas.

Day subsequently passed away, and the operation of the club underwent various changes. Relevant here, New Frontier Bank of Greeley acquired the facilities property owned or operated by Black Canyon Golf, LLLP. Thomas was later unable to obtain performance of the club's obligations under the agreement to issue or honor the memberships. Consequently, in September 2007, Thomas filed suit against Day's estate, Day's business entities, New Frontier Bank, and other defendants, seeking declaratory judgment and specific performance of the agreement. In October 2007, Thomas filed an amended complaint, adding claims for reformation of contract, damages, and unjust enrichment. Among his requests for relief, Thomas sought recoupment of the $500,000 he paid under the agreement, plus allowable interest.[2]

⋅ In April 2009, the Colorado State Bank Commissioner, by order of the Colorado State Banking Board, closed New Frontier Bank and appointed the FDIC as receiver. Pursuant to FIRREA, 12 U.S.C. § 1821(d)(2), the FDIC assumed "all rights, titles, powers, and privileges" of the failed bank. In May 2009, the FDIC was substituted for New Frontier Bank in this case.[3]

As required by FIRREA, 12 U.S.C. § 1821(d)(3)(B), the FDIC published notices in local newspapers on three separate dates. These notices advised that all creditors having claims against the former New Frontier Bank, together with supporting proof, had to be filed with the FDIC by July 15, 2009. These notices further advised that:

Under federal law, with certain limited exceptions, failure to file such claims by the Bar Date [July 15, 2009] will result in disallowance by the Receiver, the disallowance will be final, and further rights or remedies with regard to the claims will be barred. 12 U.S.C. Section 1821(d)(5)(C), (d)(6).

In addition, on July 17, 2009, the FDIC sent Thomas a "Notice to Discovered Creditor" pursuant to section 1821(d)(3)(C). This individual notice provided Thomas an additional ninety days (to October 15, 2009) to file a proof of claim with the FDIC together with an explanation of why a claim had not been filed by the Bar Date. Despite these notices, Thomas did not file any proof of claim with the FDIC, before or after the Bar Date or the October deadline.

In February 2010, after settlement efforts were unsuccessful, the FDIC moved to dismiss Thomas's claims against it for lack of subject matter jurisdiction under C.R.C.P. 12(b)(1), citing Thomas's failure to exhaust the administrative claims process under FIRREA. The trial court denied the motion, reasoning that FIRREA does not divest courts of subject matter jurisdiction over claims filed prior to receivership. The FDIC then petitioned this court for relief under C.A.R. 21, contending that the trial court was proceeding without jurisdiction. We issued a rule to show cause and now make the rule absolute.

## II. Analysis

The issue in this case is whether a litigant who has an action pending against a bank that is later placed in receivership (a prereceivership claim) must pursue FIRREA's administrative claims process in order to continue the action in state court. At base, this

---

**2.** In a separate receivership action, Case No. 2007CV49 (Montrose Dist. Ct.), Brown Financial, LLC, one of the secured creditors of the golf course and club property, requested appointment of a receiver to manage and operate the golf course. Rick Chulick was appointed receiver in that action in March 2007. New Frontier later succeeded to the interests of Brown Financial in the deeds of trust relating to the golf course and related lots, and the court dismissed Brown Financial from the receivership action in July 2007. In February 2008, Thomas moved to intervene in 2007CV49, raising claims for declara-

tory relief and specific performance of the agreement. According to the parties, that case has been stayed pending the resolution of this petition.

**3.** This original proceeding addresses only those claims against defendant FDIC, in its capacity as receiver of New Frontier Bank. We do not consider or address any claim in the underlying action asserted by Thomas against other named defendants.

case presents a conflict between (1) the general principle that once subject matter jurisdiction is established at the time of filing, it is not lost by subsequent actions or omissions of the parties, and (2) a federal statute that precludes jurisdiction over claims against receivers except as otherwise provided in that statute.

The mere appointment of a receiver does not divest a state court of jurisdiction over pre-receivership claims against a failed bank. Rather, a state court action may be stayed pending the exhaustion of FIRREA's administrative claims process. Thereafter, if the receiver denies the administrative claim, or the 180–day period to process the claim otherwise expires, a claimant may continue a previously filed state court action.

However, we conclude that FIRREA withdraws jurisdiction over pre-receivership claims where a claimant fails to exhaust the administrative claims process. Congress has made clear that "no court" shall have jurisdiction over any claim or action against the assets of a failed bank that has been placed in receivership "except as otherwise provided" in section 1821(d), which sets forth the administrative claims process. 12 U.S.C. § 1821(d)(13)(D). To permit a claimant to maintain a pre-receivership claim in state court despite the claimant's failure to exhaust a properly noticed administrative claims process would frustrate Congress's objectives in enacting FIRREA. Here, because Thomas failed to pursue or exhaust the administrative claims process under FIRREA despite proper notice, the trial court should have dismissed Thomas's claims against the FDIC for lack of subject matter jurisdiction.

### A. Standard of Review

■ When a trial court's ruling on a C.R.C.P. 12(b)(1) motion hinges on determinations of fact, we review it for clear error. *See Corsentino v. Cordova*, 4 P.3d 1082, 1087 (Colo.2000). In this case, however, the motion presents pure questions of law; therefore, our review is de novo. *See id.*

■ In construing a statute, our purpose is to "give effect to the intent of the legislature and adopt the statutory construc-

tion that best effectuates the purposes of [the] legislative scheme." *Spahmer v. Gullette*, 113 P.3d 158, 162 (Colo.2005). We determine and effectuate the legislature's intent by looking first to the language of the statute. *Sky Fun 1 v. Schuttloffel*, 27 P.3d 361, 367 (Colo.2001) (interpreting the Airline Pilot Hiring & Safety Act, 49 U.S.C. § 44936).

### B. Administrative Exhaustion Principles

■ The doctrine of administrative exhaustion requires a party to pursue available statutory administrative remedies before obtaining judicial review of a claim. Where a party fails to exhaust these remedies, a trial court is without jurisdiction to hear the action. *State v. Golden's Concrete Co.*, 962 P.2d 919, 923 (Colo.1998). The doctrine promotes important policy interests, including the efficient use and conservation of judicial resources, by ensuring that courts intervene only if the administrative process fails to provide adequate remedies. *City & Cnty. of Denver v. United Air Lines, Inc.*, 8 P.3d 1206, 1212–13 (Colo.2000). The doctrine enables an agency to make initial determinations on matters within its expertise, identify and correct its own errors, and develop a factual record that will benefit the court if satisfactory resolution cannot be reached through the administrative process. *See Golden's Concrete Co.*, 962 P.2d at 923.

■ The doctrine is subject to limited exceptions where its application would not further these underlying policy interests. For example, if the controversy involves questions of law that are not within the agency's expertise or capacity to determine, or where it is "clear beyond a reasonable doubt" that pursuit of relief from the agency would be "futile," a court will entertain a party's claim despite its failure to exhaust available administrative processes. *United Air Lines, Inc.*, 8 P.3d at 1213. However, where no exception applies, a trial court is without jurisdiction to entertain a claim by a party that has not satisfied the exhaustion requirement. *Golden's Concrete Co.*, 962 P.2d at 923–24.

### C. FIRREA Requires Administrative Exhaustion

 The trial court concluded that FIRREA does not require exhaustion of its administrative claims procedures in order for the court to maintain jurisdiction over Thomas's pre-receivership action. We disagree.

#### 1. Background of FIRREA

Congress enacted FIRREA in 1989 in response to the crisis in the savings and loan industry at that time. "[T]he purpose of FIRREA was to revamp the deposit insurance fund system in order to strengthen the country's financial system.'" *Fed. Deposit Ins. Corp. v. Am. Cas. Co. of Reading, Pa.*, 843 P.2d 1285, 1291 (Colo.1992) (quoting *Fed. Deposit Ins. Corp. v. Am. Cas. Co. of Reading, Pa.*, 975 F.2d 677, 681 (10th Cir.1992)).

Among other things, FIRREA established the Resolution Trust Corporation ("RTC"), which took over the functions of the Federal Savings and Loan Insurance Corporation ("FSLIC") with respect to handling failed savings and loan institutions. *See* 12 U.S.C. § 1441a(b)(3); *Rosa v. Resolution Trust Corp.*, 938 F.2d 383, 388 (3d Cir.1991).[4] Congress also "enhanced the regulatory and enforcement powers of the FDIC" with respect to failed banks. *Am. Cas. Co.*, 843 P.2d at 1291 (quoting *Am. Cas. Co.*, 975 F.2d at 681). As a receiver, the FDIC succeeds to "all rights, titles, powers, and privileges" of the failed bank. 12 U.S.C. § 1821(d)(2)(A)(i). The FDIC must preserve and conserve the failed bank's assets and property, liquidate those assets where appropriate, and pay all valid obligations of the failed bank in accordance with statutory directives. *Id.* §§ 1821(d)(2)(B)(iv),-(2)(E),-(2)(H). Relevant here, Congress empowered the FDIC to "administer a streamlined claims procedure designed to dispose of the bulk of claims against failed financial institutions expeditiously and fairly." *Fed. Deposit Ins. Corp.*

*v. Updike Bros., Inc.*, 814 F.Supp. 1035, 1038 (D.Wyo.1993).

 Several courts have marveled at the complexity of FIRREA. *See, e.g., Marquis v. Fed. Deposit Ins. Corp.*, 965 F.2d 1148, 1151 (1st Cir.1992) (FIRREA's text is "a veritable jungle of linguistic fronds and brambles."); *Guidry v. Resolution Trust Corp.*, 790 F.Supp. 651, 653 (E.D.La.1992) ("[T]he statute makes the Internal Revenue Code look like a first grade primer."); *Armstrong v. Resolution Trust Corp.*, 157 Ill.2d 49, 191 Ill.Dec. 46, 623 N.E.2d 291, 295 (1993) (FIRREA is "a veritable Escher print set to words, complete with waterfalls that flow backwards."). However, complexity is not ambiguity. As discussed below, our analysis of the statute's language and structure satisfies us that the administrative claims process is mandatory even for pre-receivership claims, and that a claimant's failure to pursue or exhaust FIRREA's administrative remedies divests a court of continuing jurisdiction over pre-receivership claims.

#### 2. Statutory Analysis

To effectuate its goals of managing claims expeditiously through an administrative process under FIRREA, Congress placed limits on judicial review of matters involving failed depository institutions. *See Brady Dev. Co. v. Resolution Trust Corp.*, 14 F.3d 998, 1003 (4th Cir.1994). Specifically, section 1821(d)(13)(D) provides:

*Except as otherwise provided in this subsection, no court shall have jurisdiction over—*

(i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or

---

**4.** The legislative history of FIRREA indicates that its administrative claims procedures were intended to address problems with the prior FSLIC claims process identified by the U.S. Supreme Court in *Coit Independence Joint Venture v. Federal Savings & Loan Insurance Corp.*, 489 U.S. 561, 586, 109 S.Ct. 1361, 103 L.Ed.2d 602 (1989) (concluding that then-existing Bank Board regu-

lations exceeded the Board's statutory authority by purporting to confer adjudicatory authority on FSLIC without de novo judicial review, and failing to place a clear and reasonable time limit on FSLIC's consideration of whether to pay, settle, or disallow claims). *See* H.R.Rep. No. 101–54, pt. 1, at 418–19 (1989), *reprinted in* 1989 U.S.C.C.A.N. 86, 214–15.

(ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

(Emphasis added.) In short, Congress provided in FIRREA that "no court" shall have jurisdiction over any claim or any action concerning the assets of a failed bank in receivership "except as otherwise provided in [subsection (d)]."

Subsection (d) establishes an administrative process to review and resolve claims against insolvent depository institutions that have entered receivership. 12 U.S.C. §§ 1821(d)(3)-(d)(13). Once the FDIC is appointed as a receiver, it must publish notice to the failed bank's creditors informing them that they must present proof of their claims by a certain date not less than 90 days from the date of publication. *Id.* § 1821(d)(3)(B)(i). This notice must be republished approximately one month and two months after the initial publication. *Id.* § 1821(d)(3)(B)(ii). In addition, the receiver must mail individual notice to any creditor shown on the institution's books and to any claimant later discovered. *Id.* § 1821(d)(3)(C).

If a creditor submits a claim by the date specified in the notice, the receiver has 180 days to allow or disallow the claim and notify the claimant of the determination. *Id.* § 1821(d)(5)(A)(i). Where the receiver disallows the claim or fails to make a determination within the 180–day period, the claimant has 60 days to seek further administrative review, file suit on such claim in federal court, or continue an action commenced before the appointment of the receiver. *Id.* § 1821(d)(6)(A). If the claimant fails within that time to seek further administrative review or judicial relief, the claim shall be deemed permanently disallowed. *Id.* § 1821(d)(6)(B).

Thus, subsection (d)(6) establishes a 60–day window in which a party may file suit on a disallowed claim or continue an action commenced before the appointment of the receiver. However, this 60–day window to seek

judicial relief is triggered *only after the administrative claims process has concluded;*[5] namely, upon the occurrence of one of two possible events: notice of disallowance of a claim (in whole or in part), or expiration of the 180 days to process a claim. Indeed, if the creditor fails to file a claim with the receiver within the applicable time period noticed, such claim "shall be disallowed and such disallowance shall be final." *Id.* § 1821(d)(5)(C)(i); *Brady Dev. Co.*, 14 F.3d at 1003 (failure of a creditor to file an administrative claim by the date specified in the notice renders the claim permanently disallowed).

These provisions, construed collectively, establish that jurisdiction exists to consider any claim or action seeking a determination of rights with respect to the assets of a failed bank that has entered receivership only when the claim has been timely filed with the receiver and the administrative process has been exhausted. 12 U.S.C. §§ 1821(d)(5)(C)(i),-(d)(6),-(d)(13)(D).

In concluding otherwise, the trial court overlooked subsection (d)(6) and instead erroneously relied on subsection (d)(5)(F)(ii), which provides that "the filing of a claim with the receiver shall not prejudice any right of the claimant to continue any action which was filed before the appointment of the receiver." The trial court interpreted this provision to mean that any administrative determination by the FDIC "would have no legal effect upon a pre-receivership claim." Given this interpretation, the trial court decided it would be "unreasonable to conclude that Congress would divest a court of jurisdiction over a preexisting claim by requiring a claimant to utilize a meaningless administrative process" that has no "binding legal effect."

Section 1821(d)(5)(F)(ii) does not change our analysis. By its very language, section 1821(d)(5)(F)(ii) applies where a claimant has *filed a claim* with the receiver; that is, it presumes the administrative claims process was followed. Although it states that an existing action shall not be prejudiced by

---

**5.** Although a dissatisfied claimant may request a second tier of administrative claim review under section 1821(d)(7), such review is "in lieu of filing or continuing any [judicial] action," and therefore is not a required step in the administrative claims process in order to establish or maintain jurisdiction in an appropriate court. *See id.*

filing an administrative claim, this provision does not address a claimant's *failure* to file a claim or imply that the administrative process need not be followed. Rather, the provision is consistent with subsection (d)(6), which permits a claimant to file suit or continue an action *after* exhausting the administrative claims process. Congress plainly intended the administrative claims process "to provide a streamlined method for resolving most claims against failed institutions in a prompt and orderly fashion, without lengthy litigation." *Marquis,* 965 F.2d at 1152. That FIRREA permits a claimant to seek judicial relief after exhausting administrative remedies does not render the administrative process meaningless. To the contrary, it ensures that a court becomes involved or continues involvement in a related claim only if the administrative process fails to reach an adequate resolution.

We do not suggest that the mere appointment of a receiver divests a state court of jurisdiction over a claim against a failed bank. FIRREA expressly allows for preexisting actions to be stayed and contemplates that such actions may be "continue[d]" following completion of the administrative claims process. 12 U.S.C. § 1821(d)(12) (providing for stays of pending suits); *id.* §§ 1821(d)(5)(F)(ii),-(d)(6)(A)(ii) (permitting a claimant to continue a previously filed action). Thus, FIRREA creates a scheme under which the trial court retains jurisdiction over a pre-receivership claim—suspending, rather than dismissing, the suits, "subject to a stay of proceedings as may be appropriate to permit exhaustion of the administrative review process as it pertains to the underlying claims." *Marquis,* 965 F.2d at 1154; *see also Carney v. Resolution Trust Corp.,* 19 F.3d 950, 956 (5th Cir.1994).

The question in this case, however, is whether a trial court retains jurisdiction over a pre-receivership claim where the litigant fails to exhaust FIRREA's administrative claims process. We conclude it does not.

### D. Failure to Exhaust FIRREA's Administrative Process Divests a Court of Jurisdiction over Pre–Receivership Claims

As discussed above, under the doctrine of administrative exhaustion, a party's failure to exhaust available administrative remedies generally deprives a court of subject matter jurisdiction over the action. Here, the text of FIRREA creates just such a jurisdictional prerequisite by expressly providing that "no court shall have jurisdiction" over claims against the receiver outside the administrative claims process set forth in section 1821(d). 12 U.S.C. § 1821(d)(13)(D).

This does not end our inquiry, however, because this case involves a pre-receivership claim: Thomas filed his action against New Frontier Bank in state court before the FDIC was appointed receiver and substituted for the failed bank as a party.

A majority of federal courts have held that FIRREA's exhaustion requirements apply with equal force to pre-receivership claims. *See, e.g., Intercontinental Travel Mktg., Inc. v. Fed. Deposit Ins. Corp.,* 45 F.3d 1278, 1282–84 (9th Cir.1994) (holding FIRREA's exhaustion requirement is mandatory for both pre- and post-receivership claims); *Carney,* 19 F.3d at 955 (same); *Brady Dev. Co.,* 14 F.3d at 1005–06 (same); *Bueford v. Resolution Trust Corp.,* 991 F.2d 481, 485 (8th Cir.1993) (same); *Marquis,* 965 F.2d at 1151 (same); *Resolution Trust Corp. v. Mustang Partners,* 946 F.2d 103, 106 (10th Cir.1991) (same).

These courts reason that FIRREA does not create a separate scheme for cases pending at the time the FDIC is appointed receiver. Rather, section 1821(d)(6)(A) allows a dissatisfied claimant to "continue an action commenced before the appointment of the receiver," after the administrative process has been completed. *Brady Dev. Co.,* 14 F.3d at 1003. This language reflects that Congress intended the statutory provisions to apply to claims filed before the receiver was appointed. *Mustang Partners,* 946 F.2d at 106 ("[A] thorough reading of the applicable provisions in FIRREA fails to produce any language which could be construed to support [the] argument that the claim procedures can be dispensed with in cases where suit was filed prior to the appointment of the receiver.").

Similarly, several state courts have expressly acknowledged that continuing state court jurisdiction over pre-receivership claims is premised upon the claimant having first exhausted FIRREA's administrative remedies. *See Resolution Trust Corp. v. Binford,* 114 N.M. 560, 844 P.2d 810, 816 (1992) (concluding state court jurisdiction continues "after the administrative claims procedure has been exhausted"); *Ungar v. Ensign Bank,* 196 A.D.2d 204, 608 N.Y.S.2d 405, 409 (1994) (stating "a claimant must comply with the claims process before seeking judicial relief" on a pre-receivership claim against the institution); *Fed. Deposit Ins. Corp. v. Warmann,* 859 S.W.2d 948, 950 (Mo. Ct.App.1993) (holding that "pre-receivership claims, which are suspended during the administrative process, may be continued after that process is complete"); *Resolution Trust Corp. v. Foust,* 177 Ariz. 507, 869 P.2d 183, 192 (Ariz.Ct.App.1993) (reasoning state courts are not divested of jurisdiction over pre-receivership actions "if the claimant complies with the administrative claims procedures"); *cf. McLaughlin v. Fed. Deposit Ins. Corp.,* 415 Mass. 235, 612 N.E.2d 671, 672 (1993) (concluding that a plaintiff's failure to timely participate in FIRREA's administrative process was fatal to her appeal).

In this case, the claimant did not exhaust FIRREA's administrative claims process. Thus, the question here is whether state court jurisdiction, previously established when the complaint was filed, is subsequently lost for failure to exhaust FIRREA's administrative remedies.

 District courts in Colorado are courts of general jurisdiction. Colo. Const. art. VI, § 9(1). A court's acquisition of subject matter jurisdiction depends on the facts existing at the time jurisdiction is invoked, and a court ordinarily does not lose jurisdiction by the occurrence of subsequent events, even if those events would have prevented acquiring jurisdiction in the first place. *Secrest v. Simonet,* 708 P.2d 803, 807 (Colo. 1985). While jurisdiction may be limited by the legislature, any such limitation on the power of the courts must be explicit. *In re A.W.,* 637 P.2d 366, 374 (Colo.1981).

Because this case concerns a pre-receivership claim, tension arises between the principle, on the one hand, that once subject matter jurisdiction is established at the time of filing, it is not lost by the occurrence of subsequent events, and FIRREA's express mandate, on the other hand, that "no court" shall have jurisdiction over "any claim" or "any action seeking a determination of rights" if the administrative procedures of the Act have not been exhausted.

 Under the Supremacy Clause, U.S. Const. art. VI, cl. 2, state law must yield to federal law when application of the two conflict. *See Gulf Offshore Co. v. Mobil Oil Corp.,* 453 U.S. 473, 478, 101 S.Ct. 2870, 69 L.Ed.2d 784 (1981) (federal law preempts state jurisdiction where Congress so provides "by an explicit statutory directive, by unmistakable implication from legislative history, or by a clear incompatibility between state-court jurisdiction and federal interests"); *see also Middleton v. Hartman,* 45 P.3d 721, 731 (Colo.2002); *Greenwood Trust Co. v. Conley,* 938 P.2d 1141, 1147 (Colo.1997).

As discussed above, in enacting FIRREA, Congress intended to create an orderly and efficient process "enabling the FDIC to dispose of the bulk of claims against failed financial institutions expeditiously and fairly . . . without unduly burdening the . . . [c]ourts." *Tri–State Hotels, Inc. v. Fed. Deposit Ins. Corp.,* 79 F.3d 707, 712 (8th Cir. 1996) (internal quotations omitted). This objective mirrors many of the policy considerations for requiring administrative exhaustion in the first instance. *See Brady Dev. Co.,* 14 F.3d at 1006 ("Exhaustion of administrative remedies is a requirement for efficiently administering the massive volume of claims."). To permit a pre-receivership claim to be maintained in state court when the claimant has not complied with FIRREA's administrative requirements is contrary to Congress's declaration that "no court" shall have jurisdiction over such claims, and would improperly "permit creditors to evade the comprehensive administrative claims procedures envisioned by the statute." *Id.; see also Tillman v. Resolution Trust Corp.,* 37 F.3d 1032, 1036 (4th Cir.1994). As a result, state court general jurisdiction directly con-

flicts with an explicit statutory directive and is incompatible with the accomplishment of Congress's full objectives; therefore, under such circumstances, continuing state court jurisdiction is preempted. *See Middleton,* 45 P.3d at 734.

Accordingly, where a claimant fails to exhaust FIRREA's administrative remedies, the state court no longer may exercise jurisdiction over a pre-receivership claim.[6] To the extent other state courts have reached a contrary conclusion, we disagree with the reasoning of those decisions. *See Herbst v. Resolution Trust Corp.,* 66 Ohio St.3d 8, 607 N.E.2d 440, 446 (1993) (finding that state court action should not be dismissed for failure to file an administrative claim with RTC); *Berke v. Resolution Trust Corp.,* 483 N.W.2d 712, 716 (Minn.App.1992) (concluding that state courts are not automatically deprived of jurisdiction based on a subsequent failure to exhaust RTC's administrative remedies).

Thomas relies on contrary federal authority in *Whatley v. Resolution Trust Corp.,* 32 F.3d 905 (5th Cir.1994) and *In re Lewis,* 398 F.3d 735 (6th Cir.2005). These cases, which conclude that FIRREA's administrative claims process does not apply to pre-receivership claims, express the minority view. For the reasons explained above, we disagree and instead follow the weight of authority holding that FIRREA's administrative exhaustion requirements apply to pre-receivership claims as well.[7]

## III. Application

It is undisputed that the FDIC provided proper notice of its administrative claims

process through newspaper publication and individually to Thomas as a "Discovered Creditor."[8] The published notices identified the deadline for filing an administrative claim and included a statement that failure to file a claim by the specified date would result in its permanent disallowance. Thomas's individual notice provided him an additional 90 days to file a proof of claim together with an explanation of why a claim had not been filed by the deadline. It is also undisputed that Thomas did not file an administrative claim with the receiver. Because Thomas failed to timely exhaust FIRREA's administrative claims process despite proper notice, the trial court no longer had jurisdiction to consider his pre-receivership claims against the FDIC.

On appeal, Thomas contends for the first time that FIRREA's requirements do not apply to him because his principal claim is not for money damages and therefore he is not a "creditor." We reject this contention. Thomas's First Amended Complaint asserts a claim for damages and requests recoupment of the $500,000 paid for the golf memberships. Thus, his pleadings reflect that he does seek money damages, and as receiver, the FDIC steps into the shoes of the failed New Frontier Bank, which had assumed control of the entity that owned and operated the club facilities identified in the agreement with Thomas.

In any event, section 1821(d)(13)(D) applies to "any claim or action for payment from, or *any action seeking a determination of rights with respect to,* the assets of" a failed bank.

---

**6.** We presume for purposes of this opinion (and the parties have not argued otherwise) that included within Congress's power to regulate claims against the FDIC is the corollary power to preempt jurisdiction over such related state law claims. *See, e.g., Resolution Trust Corp. v. Binford,* 114 N.M. 560, 844 P.2d 810, 813 (1992) (assuming for purposes of that opinion that Congress can divest state courts of subject-matter jurisdiction over state-law claims by same standards as those for divesting state courts of presumed jurisdiction over federal causes of action).

**7.** In any event, both *Whatley* and *Lewis* are factually distinguishable from the circumstances of this case, making the reasoning of those decisions particularly inapplicable here. In those

cases, the receiver either failed to follow notice requirements and communicate in good faith with plaintiffs who had pending claims known to the receiver, *Whatley,* 32 F.3d at 906–08 (noting the "odious dimension" of such circumstances and describing the receiver as "[lying] in ambush"), or invoked FIRREA's administrative exhaustion requirement only after protracted litigation in the trial and appellate courts, *Lewis,* 398 F.3d at 746 (describing facts as "egregious"). This case involves no comparable circumstances.

**8.** Thomas does not contend that he did not receive notice or that such notice provided by the FDIC was legally defective. Rather, he claims he was not required to exhaust FIRREA's administrative remedies.

Thomas's claims for declaratory judgment, reformation of contract, specific performance, and unjust enrichment also fit this definition. *See Freeman v. Fed. Deposit Ins. Corp.,* 56 F.3d 1394, 1402 (D.C.Cir.1995) (section 1821(d) jurisdictional bar is not limited to claims by "creditors" but extends to all claims and actions against, and actions seeking a determination of rights with respect to, the assets of a failed financial institution for which the FDIC serves as receiver); *Updike Bros., Inc.,* 814 F.Supp. at 1039 (rejecting "hypertechnical reliance on the use of the word creditor'"; language of section 1821(d)(13)(D) is quite broad).

Finally, to the extent Thomas asks us to remand the case for a hearing to determine the existence of a possible exception to the exhaustion requirement, we deny his request. Thomas neither specifies which exception he would claim nor argues that the trial court wrongfully failed to schedule a hearing. In any event, a hearing would serve no purpose here because Thomas cannot establish an exception to the administrative exhaustion requirement. As such, we have no basis to rule in his favor on this point.

## IV. Conclusion

A claimant who commences an action against a bank in state court before it is placed in receivership and who subsequently exhausts FIRREA's administrative remedies may thereafter continue the action in the court in which it was pending. We hold, however, that where a claimant has received proper notice of the required administrative claims procedures under FIRREA, yet fails to exhaust those administrative remedies, the Act precludes any court from continuing to exercise jurisdiction over pre-receivership claims filed against a failed bank. Accordingly, we make the rule absolute and remand to the trial court with directions to dismiss Thomas's claims against the FDIC for lack of subject matter jurisdiction.