Judge CASEBOLT dissenting.
¶ 62 I disagree with the majority's decision not to address defendant's preemption contention raised for the first time on appeal. In my view, the contention implicates the subject matter jurisdiction of our state courts and thus may be raised at any time. In any event, we may review the newly raised contention for plain error. Addressing that contention, I conclude that the provisions of the federal Immigration and Nationality Act preempt Colorado's smuggling of humans statute. Accordingly, I respectfully dissent.
I. Reviewability of Defendant's Contention
A. Subject Matter Jurisdiction
¶ 63 First, I perceive that whether a state statute is preempted by federal law presents an issue of subject matter jurisdiction. See Thomas v. F.D.I.C., 255 P.3d 1073, 1078 (Colo.2011) (stating that state law must yield to federal law when application of the two conflict; federal law preempts state jurisdiction where Congress so provides "by an explicit statutory directive, by unmistakable implication from legislative history, or by a *828 clear incompatibility between state-court jurisdiction and federal interests" (quoting Gulf Offshore Co. v. Mobil Oil Corp., 453 U.S. 473, 478, 101 S.Ct. 2870, 69 L.Ed.2d 784 (1981) )); In re Marriage of Anderson, 252 P.3d 490, 494 (Colo.App.2010) (concluding that state courts lack subject matter jurisdiction to divide parties' Social Security benefits in a dissolution of marriage property distribution); Osband v. United Airlines, Inc., 981 P.2d 616, 619 (Colo.App.1998) (stating that "[i]f federal law preempts state law, the state trial court lacks subject matter jurisdiction to hear a claim"); Thayer v. McDonald, 781 P.2d 190, 190 (Colo.App.1989) (stating that failure to assert the doctrine of federal preemption in the trial court does not preclude consideration on appeal because the defense of lack of subject matter jurisdiction may be asserted at any time, including on appeal); cf. Town of Carbondale v. GSS Props., LLC, 169 P.3d 675, 683 (Colo.2007) (finding that whether a state statute preempts a local ordinance essentially turns on whether the issue presents a choice of law or choice of forum question; however, whether a federal provision preempts a state law may raise a separate set of issues).
¶ 64 Hence, in my view, we must address defendant's contention. See Herr v. People, 198 P.3d 108, 111 (Colo.2008) (stating that a challenge to a court's subject matter jurisdiction is not waivable and may be raised for the first time on appeal); see also Consolidated Theatres, Inc. v. Theatrical Stage Emps. Union, 69 Cal.2d 713, 73 Cal.Rptr. 213, 447 P.2d 325, 331 (1968) ; Boca Burger, Inc. v. Forum, 912 So.2d 561, 568 (Fla.2005) (noting that federal preemption is a question of subject matter jurisdiction); Joe Nagy Towing, Inc. v. Lawless, 101 So.3d 868, 872-73 (Fla.Dist.Ct.App.2012) (stating that even though the issue was not raised in trial court, federal preemption is a question of subject matter jurisdiction and therefore can be raised at any time, even for the first time on appeal); Packowski v. United Food & Commercial Workers, 289 Mich.App. 132, 796 N.W.2d 94, 98-99 (2010) ; Werner v. Plater-Zyberk, 799 A.2d 776, 787 (Pa.Super.Ct.2002) (concluding that federal preemption is a jurisdictional matter for a state court because it challenges subject matter jurisdiction and the competence of the court to reach the merits of the claims raised); M & I Marshall & Ilsley Bank v. Guaranty Fin., MHC, 334 Wis.2d 173, 800 N.W.2d 476, 483 (Wis.Ct.App.2011) ("Federal preemption of a matter deprives a state court of subject matter jurisdiction." (quoting Dykema v. Volkswagenwerk AG, 189 Wis.2d 206, 525 N.W.2d 754, 756 (Wis.Ct.App.1994) )); contra Int'l Longshoremen's Ass'n v. Davis, 470 So.2d 1215, 1216 (Ala.1985), aff'd on other grounds, 476 U.S. 380, 106 S.Ct. 1904, 90 L.Ed.2d 389 (1986) ; Local 447 v. Feaker Painting, Inc., 788 N.W.2d 398, 2010 WL 2757376, at *3 (Iowa Ct.App.2010) (unpublished table decision) (stating that federal preemption may or may not implicate the subject matter jurisdiction of the state court).
¶ 65 We review de novo whether a court has subject matter jurisdiction. Thomas, 255 P.3d at 1077. We also review issues of federal preemption de novo. Timm v. Prudential Ins. Co., 259 P.3d 521, 525 (Colo.App.2011).
B. Plain Error Review
¶ 66 Even if, as the majority contends, federal preemption does not implicate a court's subject matter jurisdiction, I would review for plain error. When, as here, a defendant fails to raise the issue in the trial court, we review for plain error. See People v. Greer, 262 P.3d 920, 931-38 (Colo.App.2011) (J. Jones, J., specially concurring) (concluding that certain unpreserved constitutional claims should be reviewed on appeal for plain error); see also Lucero v. People, 2012 CO 7, ¶¶ 23-26, 272 P.3d 1063 (addressing merger contention even though defendant failed to raise the issue in the trial court); People v. Herron, 251 P.3d 1190, 1192 (Colo.App.2010) (addressing alleged double jeopardy error on plain error review).
¶ 67 "Plain" in this context is synonymous with "clear" or "obvious." Lehnert v. People, 244 P.3d 1180, 1185 (Colo.2010). Plain error is error that is so clear-cut, so obvious, that a competent trial judge should be able to avoid it without benefit of objection. People v. O'Connell, 134 P.3d 460, 464 (Colo.App.2005) (citing United States v. Olano, 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) ). Plain error requires reversal if, after a review *829 of the entire record, a court can conclude with fair assurance that the error so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction. Lehnert, 244 P.3d at 1185.
II. Analysis
¶ 68 Upon review, whether for presence of subject matter jurisdiction or for plain error, I conclude that federal law preempts section 18-13-128, C.R.S.2012, under principles of field and conflict preemption. Furthermore, to the extent that review would be for plain error, I conclude that the error here is obvious and affects the fundamental fairness of the proceeding. Accordingly, I would reverse the judgment of conviction.
A. Law
¶ 69 Preemption may be either expressed or implied and is compelled whether Congress's command is explicitly stated in the statute's language or implicitly contained in its structure and purpose. Gade v. National Solid Wastes Management Ass'n, 505 U.S. 88, 98, 112 S.Ct. 2374, 120 L.Ed.2d 73 (1992).
¶ 70 There are generally three classes of preemption: express, field, and conflict preemption. Id. Absent express preemption language in the statute, field preemption occurs when a Congressional legislative scheme is so pervasive as to make reasonable the inference that Congress left no room for the states to supplement it, id., and conflict preemption occurs where compliance with both federal and state regulations is a physical impossibility or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. Id.; see Colo. Mining Ass'n v. Bd. of Cnty. Commis., 199 P.3d 718, 723 (Colo.2009) (stating that federal law preempts state law when Congress expresses clear intent to preempt state law; when there is outright or actual conflict between federal and state law; when compliance with both federal and state law is physically impossible; when there is an implicit barrier within federal law to state regulation in a particular area; when federal legislation is so comprehensive as to occupy the entire field of regulation; or when state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress) (citing Dep't of Health v. The Mill, 887 P.2d 993, 1004 (Colo.1994) ).
¶ 71 To determine the boundaries that Congress sought to occupy within the field, we look to the federal statute itself, read in the light of its constitutional setting and its legislative history. DeCanas v. Bica, 424 U.S. 351, 360 n. 8, 96 S.Ct. 933, 47 L.Ed.2d 43 (1976).
¶ 72 In determining the extent to which federal statutes preempt state law, courts are guided by two cornerstones. Wyeth v. Levine, 555 U.S. 555, 565, 129 S.Ct. 1187, 173 L.Ed.2d 51 (2009). First, "the purpose of Congress is the ultimate touchstone in every pre-emption case." Id. (quoting Medtronic, Inc. v. Lohr, 518 U.S. 470, 485, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996) ). Second, we presume "that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress."Id. (quoting Medtronic, Inc., 518 U.S. at 485, 116 S.Ct. 2240 ); see also Arizona v. United States, 567 U.S. 387, 399-400, 132 S.Ct. 2492, 2501, 183 L.Ed.2d 351 (2012).
B. Application
¶ 73 "The Government of the United States has broad, undoubted power over the subject of immigration and the status of aliens. This authority rests, in part, on the National Government's constitutional power to 'establish an uniform Rule of Naturalization' and its inherent power as sovereign to control and conduct relations with foreign nations." Arizona v. United States, 567 U.S. at 394-95, 132 S.Ct. at 2498 (citations omitted) (quoting U.S. Const. art. I, § 8, cl. 4).
¶ 74 Furthermore, "[f]ederal governance of immigration and alien status is extensive and complex." Id. at 395, 132 S.Ct. at 2499. It includes specifying admission and exclusion of aliens, registration requirements, establishment of status, regulation of public benefits available to aliens, removal, employment restrictions, and the granting or denial of asylum, among other things. Id. Federal agencies, including the Department of Homeland Security, Customs and Border Protection, and Immigration and Customs Enforcement are responsible for determining *830 admissibility of aliens, securing the country's borders, and enforcing immigration related statutes. Id.
¶ 75 Arizona v. United States addressed the constitutionality of an Arizona statute relating to unlawful aliens, in particular, whether the Arizona statute was preempted by federal law. In holding that major parts of the statute were preempted, the Court noted that the Supremacy Clause gives Congress the power to preempt state law expressly, but absent express preemption, states are also precluded from regulating conduct in a field that Congress has determined must be regulated by its exclusive governance.
The intent to displace state law altogether can be inferred from a framework of regulation "so pervasive ... that Congress left no room for the States to supplement it" or where there is a "federal interest ... so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject."
Id. at ----, 132 S.Ct. at 2501 (quoting Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947) ).
¶ 76 The Immigration and Nationality Act, 8 U.S.C. §§ 1101 - 1537(INA), provides a comprehensive framework to penalize the transportation, concealment, and inducement of unlawfully present aliens. Ga. Latino Alliance for Human Rights v. Governor, 691 F.3d 1250, 1263-64 (11th Cir.2012). The Georgia Latino Alliance court described the scope of the INA's criminal provisions, in the course of concluding that the INA "field preempted" a Georgia law prohibiting transportation of aliens:
Pursuant to 8 U.S.C. § 1324(a)(1)(A)(ii)-(iv), it is a federal crime for any person to transport or move an unlawfully present alien within the United States; to conceal, harbor, or shield an unlawfully present alien from detection; or to encourage or induce an alien to "come to, enter, or reside in the United States." Any person who conspires or aids in the commission of any of those criminal activities is also punishable. Id. § 1324(a)(1)(A)(v). Section 1324(c) permits local law enforcement officers to arrest for these violations of federal law, but the federal courts maintain exclusive jurisdiction to prosecute for these crimes and interpret the boundaries of the federal statute. See id. § 1329. Subsection (d) of § 1324 further dictates evidentiary rules governing prosecution of one of its enumerated offenses, and subsection (e) goes so far as to mandate a community outreach program to "educate the public in the United States and abroad about the penalties for bringing in and harboring aliens in violation of this section." Rather than authorizing states to prosecute for these crimes, Congress chose to allow state officials to arrest for § 1324 crimes, subject to federal prosecution in federal court. See id. §§ 1324(c), 1329. In the absence of a savings clause permitting state regulation in the field, the inference from these enactments is that the role of the states is limited to arrest for violations of federal law.
691 F.3d at 1263-64 (footnote omitted).
¶ 77 The Georgia Latino Alliance court further noted that the comprehensive nature of the federal provisions was exemplified by how section 1324 fits within the larger context of federal statutes criminalizing acts undertaken by aliens and those who assist them in coming to or remaining within the United States:
Regarding the aliens themselves, § 1325, for example, imposes civil and criminal penalties for unlawful entry into the United States. Congress has similarly authorized criminal penalties for individuals who bring aliens into the United States, id. § 1323, aid the entry of an inadmissible alien, id. § 1327, and import an alien for an immoral purpose, id. § 1328. In enacting these provisions, the federal government has clearly expressed more than a "peripheral concern" with the entry, movement, and residence of aliens within the United States, see De Canas, 424 U.S. at 360-61 [96 S.Ct. 933], ... and the breadth of these laws illustrates an overwhelmingly dominant federal interest in the field.
691 F.3d at 1264.
¶ 78 The Georgia Latino Alliance court also concluded that the Georgia statute presented an obstacle to the execution of the federal statutory scheme, and thus was "conflict preempted." Id. at 1265. The court *831 noted that the federal provisions confined the prosecution of federal immigration crimes to federal court and thus limited the power to pursue those cases to the appropriate United States Attorney, id., and that interpretation of the Georgia criminal provision by state courts and enforcement by state prosecutors unconstrained by federal law threatened the uniform application of the INA. Id. at 1266. In addition, the court concluded that the provisions of the Georgia statute criminalizing acts of harboring and transporting unlawfully present aliens constituted an impermissible complement to the INA that "is inconsistent with Congress's objective of creating a comprehensive scheme governing the movement of aliens within the United States." Id.
¶ 79 In United States v. Alabama, 691 F.3d 1269 (11th Cir.2012), the Eleventh Circuit held that an Alabama provision criminalizing the transportation of unlawfully present aliens was preempted, based upon a very similar analysis. Id. at 1285-88.
¶ 80 In United States v. South Carolina, 840 F.Supp.2d 898 (D.S.C.2011), modified, 906 F.Supp.2d 463 (D.S.C.2012), the court held that a South Carolina statute criminalizing the transportation of aliens was preempted, employing an analysis similar to that of the Eleventh Circuit. The court concluded: "It is clear ... that Congress adopted a scheme of federal regulation regarding the harboring and transporting of unlawfully present persons so pervasive that it left no room in this area for the state to supplement it. Thus, this is a classic case of field preemption." Id. at 916-17 (citation omitted).
¶ 81 Here, section 18-13-128(1), C.R.S.2012, provides:
A person commits smuggling of humans if, for the purpose of assisting another person to enter, remain in, or travel through the United States or the state of Colorado in violation of immigration laws, he or she provides or agrees to provide transportation to that person in exchange for money or any other thing of value.
¶ 82 Comparing the federal provisions to this Colorado statute, I conclude, for a number of reasons, that the latter is preempted by principles of field preemption and conflict preemption.
¶ 83 First, the Colorado provision regulates the same field that the federal statute does-transportation of illegal aliens through the United States. The INA makes it unlawful for any person to "transport[ ] or move[ ] or attempt [ ] to transport[ ] or move[ ]" an unlawfully present alien within the United States, "knowing or in reckless disregard of the fact that an alien has come to, entered, or remain[ed] in the United States in violation of law." 8 U.S.C. § 1324(a)(1)(A)(ii). The Colorado statute essentially duplicates that provision by prohibiting any person from providing transportation to an alien in or through Colorado or the United States in exchange for money or any other thing of value for the purpose of assisting the alien in violating immigration laws. Indeed, the title of section 18-13-128 is "smuggling of humans," and 8 U.S.C. § 1101(a)(43)(N) states that the transportation offense described in 8 U.S.C. § 1324"relat[es] to alien smuggling."
¶ 84 Furthermore, the Colorado provision specifically states that the perpetrator must provide transportation in exchange for money or anything else of value, and the federal provision essentially enhances the sentence of a perpetrator who violates 8 U.S.C. § 1324 and smuggles for commercial advantage or private financial gain. 8 U.S.C. § 1324(a)(1)(B)(i). In addition, the penalties for the crimes are similar. The Colorado provision provides that a violation is a class 3 felony, which may be punished by four to twelve years of imprisonment, see § 18-1.3-401(1)(a)(V)(A), C.R.S.2012, and the federal provision provides for imprisonment for up to ten years when the transportation was done for the purpose of commercial advantage or private financial gain. 8 U.S.C. § 1324(a)(1)(B)(i).
¶ 85 In short, it is clear that the INA covers every aspect of the Colorado statute.
¶ 86 Second, by enacting the INA provisions, Congress has articulated a clear purpose of ousting state authority from the field of transporting aliens. 8 U.S.C. § 1324(c) permits local law enforcement officers to arrest for violations of the federal law, but the federal courts maintain exclusive jurisdiction *832 to prosecute for these crimes and to interpret the boundaries of the federal statute. See Ga. Latino Alliance, 691 F.3d at 1264. Moreover, 8 U.S.C. § 1324(d) prescribes evidentiary rules governing prosecution of one of its enumerated offenses, and 8 U.S.C. § 1324(e) goes so far as to mandate a community outreach program to "educate the public in the United States and abroad about the penalties for bringing in and harboring aliens in violation of this section." These federal provisions "comprehensively address[ ] criminal penalties for these actions undertaken within the borders of the United States, and a state's attempt to intrude into this area is prohibited because Congress has adopted a calibrated framework within the INA to address this issue." Id.; cf. Pennsylvania v. Nelson, 350 U.S. 497, 499, 76 S.Ct. 477, 100 L.Ed. 640 (1956) (concluding that state sedition act, which proscribed same conduct as the federal sedition act, was preempted by federal law; state's purported supplementation of federal law did not shield the state statute from federal preemption; and furthermore, Congress did not sanction concurrent legislation on the subject covered by the challenged state law).
¶ 87 Third, interpretation and application of section 18-13-128 by Colorado state courts would
threaten the uniform application of the INA. Each time a state enacts its own parallel to the INA, the federal government loses "control over enforcement" of the INA, thereby "further detract[ing] from the integrated scheme of regulation created by Congress." Wis. Dep't of Indus., Labor & Human Relations v. Gould, Inc., 475 U.S. 282, 288-89, 106 S.Ct. 1057, 89 L.Ed.2d 223 (1986).... Given the federal primacy in the field of enforcing prohibitions on the transportation, harboring, and inducement of unlawfully present aliens, the prospect of fifty individual attempts to regulate immigration-related matters cautions against permitting states to intrude into this area of dominant federal concern.
Ga. Latino Alliance, 691 F.3d at 1266. Therefore, the Colorado statute stands as an obstacle to accomplishing Congress's objective of creating a comprehensive scheme governing the movement and harboring of aliens, and thus is preempted.
¶ 88 Despite the above analysis, the People nevertheless contend that preemption does not occur here because section 18-13-128 does not regulate who may enter or remain in the United States. The truth of that contention, however, does not foreclose preemption. Instead, the contention relates to one prong of the three-prong DeCanas test, namely, whether the state statute actually regulates immigration. See DeCanas, 424 U.S. at 354-63, 96 S.Ct. 933 (state statutes related to immigration may be preempted (1) when the state statute actually regulates immigration; (2) if it was the clear purposes of Congress to preclude even harmonious state regulation touching on aliens in general; and (3) if the state law stands as an obstacle to the accomplishment and execution of the full purposes and objective of Congress). Because the "actual regulation" prong is only one alternative way for preemption to occur, the People's contention is not persuasive.
¶ 89 For that same reason, the People's reliance on State v. Barragan-Sierra, 219 Ariz. 276, 196 P.3d 879, 889 (Ariz.Ct.App.2008), is likewise unpersuasive. There, the court determined that the Arizona human smuggling statute was not preempted by federal law under the first DeCanas prong because it did not regulate immigration. As noted, however, that is not determinative under the other two prongs of DeCanas.
¶ 90 Moreover, the Barragan-Sierra court's decision that the Arizona human smuggling statute was not preempted because Congress had not made clear and manifest its purpose to prevent the states from adopting even harmonious regulations prohibiting the smuggling of illegal aliens does not withstand scrutiny in light of the substantial federal cases decided since Barragan-Sierra was announced, particularly Arizona v. United States. Likewise, I have significant doubt about the vitality of the Arizona court's additional conclusion that the Arizona statute was not preempted because it did not stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress in enacting the INA. See Eric M. Larsson, Annotation, Preemption *833 of State Statute, Law, Ordinance, or Policy with Respect to Law Enforcement or Criminal Prosecution as to Aliens, 75 A.L.R. 6th 541, §§ 5-6 (2012) (cataloguing decisions); Ben Meade, Comment, Interstate Instability: Why Colorado's Alien Smuggling Statute is Preempted by Federal Immigration Laws, 79 U. Colo. L.Rev. 237 (2008).
¶ 91 In sum, I conclude that section 18-13-128 is preempted by federal law, given the sweep of not only this statute, but also federal legislation and regulation of the immigration field generally in the area of transportation of illegal aliens. I further conclude that the Colorado statute stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress in enacting the INA. Hence, I would reverse defendant's conviction, and therefore respectfully dissent.