1
 2024 CO 67 Masterpiece Cakeshop, Inc. and Jack Phillips, Petitioners v. Autumn Scardina, Respondent No. 23SC116
Supreme Court of Colorado, En Banc
October 8, 2024
 
          
 Certiorari to the Colorado Court of Appeals Court of Appeals
 Case No. 21CA1142
 
 2
 
          
 Attorneys for Petitioners: James A. Campbell Jonathan A.
 Scruggs Jacob P. Warner Scottsdale, Arizona
 
 
           John
 J. Bursch Washington, District of Columbia
 
 
           Samuel
 M. Ventola Denver, Colorado
 
 
          
 Attorneys for Respondent: Fennemore Craig, P.C. John M.
 McHugh Denver, Colorado
 
 3
 
          
 Greisen Medlock, LLC Paula Greisen Scott Medlock Denver,
 Colorado
 
 
          
 Attorneys for Amici Curiae Aaron and Melissa Klein: Jeffrey
 C. Mateer David J. Hacker Kassandra L. Dulin Plano, Texas
 
 
          
 Kniffin Law PLLC Eric Kniffin Colorado Springs, Colorado
 
 
          
 Attorneys for Amici Curiae American Civil Liberties Union
 Foundation and American Civil Liberties Union of Colorado:
 Timothy R. Macdonald Sara R. Neel Anna I. Kurtz Laura Moraff
 Denver, Colorado
 
 
          
 Attorneys for Amici Curiae Americans United for Separation of
 Church and State, Bend the Arc: A Jewish Partnership for
 Justice, Interfaith Alliance, Methodist Federation for Social
 Action, National Council of Jewish Women, and Sikh Coalition:
 Arnold & Porter Kaye Scholer LLP Matthew J. Douglas
 Denver, Colorado
 
 
           Alex
 J. Luchenitser Kalli A. Joslin Washington, District of
 Columbia
 
 
          
 Attorneys for Amicus Curiae CatholicVote.org Education Fund:
 Illumine Legal LLC J. Brad Bergford Denver, Colorado
 
 4
 
           Scott
 W. Gaylord Greensboro, North Carolina
 
 
          
 Attorneys for Amicus Curiae Colorado Lesbian, Gay, Bisexual,
 Transgender, and Queer Chamber of Commerce: Brownstein Hyatt
 Farber Schreck, LLP Craig M. Finger Amalia Y. Sax-Bolder
 Lance T. Collins Denver, Colorado
 
 
           Mary
 L. Bonauto Boston, Massachusetts
 
 
          
 Attorneys for Amici Curiae Colorado LGBTQ+ Bar Association,
 Colorado Hispanic Bar Association, Colorado Women's Bar
 Association, and Asian Pacific American Bar Association of
 Colorado: Holland & Hart LLP Tina R. Van Bockern Thomas
 A. Morales Utsarga Bhattarai Elizabeth H. Titus Denver,
 Colorado
 
 
          
 Attorneys for Amici Curiae Colorado State Legislators of the
 74th General Assembly Representatives Stephanie Vigil, Lorena
 Garcia, Leslie Herod, Jennifer Parenti, Elizabeth Velasco,
 Brianna Titone, Chad Clifford, and David Ortiz: Davis Graham
 & Stubbs LLP Tess Hand-Bender Kristin L. Arthur Denver,
 Colorado
 
 
          
 Attorneys for Amici Curiae Colorado State Legislators of the
 74th General Assembly Senators Mark Baisley and Kevin Van
 Winkle and Representatives Brandi Bradley, Scott Bottoms, Ken
 DeGraaf, and Stephanie Luck: Arrington Law Office Barry K.
 Arrington Wheat Ridge, Colorado
 
 5
 
          
 Attorneys for Amicus Curiae Cyndol Haller: S|L Law PLLC John
 C. Sullivan Cedar Hill, Texas
 
 
          
 Nussbaum Gleason PLLC Andrew Nussbaum Colorado Springs,
 Colorado
 
 
          
 Attorneys for Amici Curiae First Amendment, Constitutional,
 and Antidiscrimination Law Scholars Scott Skinner-Thompson,
 Carlos A. Ball, Erwin Chemerinsky, Alan K. Chen, G.S. Hans,
 Woodrow Hartzog, Jennifer Hendricks, Thomas Kadri, Suzette
 Malveaux, Toni Massaro, Catherine Smith, Douglas Spencer,
 Kyle C. Velte, Ari Ezra Waldman, and Lucy Williams:
 Hutchinson Black and Cook, LLC Matthew A. Simonsen Kimberly
 M. Hult Boulder, Colorado
 
 
          
 Attorneys for Amici Curiae First Amendment Scholars George W.
 Dent, Jr.; David K. DeWolf; Bruce P. Frohnen; Brett G.
 Scharffs; and Steven D. Smith: Illumine Legal LLC Devin C.
 Daines Denver, Colorado
 
 
          
 William C. Duncan Salt Lake City, Utah
 
 
          
 Attorneys for Amici Curiae Jewish Coalition for Religious
 Liberty, Coalition for Jewish Values, Summit Ministries, The
 Colson Center for Christian Worldview, American Muslim &
 Multifaith Women's Empowerment Council, and World Hazara
 Council USA: Covenant Law PLLC Ian Speir Colorado Springs,
 Colorado
 
 
           Howard
 Slugh Washington, District of Columbia
 
 6
 
          
 Attorneys for Amicus Curiae Lambda Legal Defense and
 Education Fund, Inc. Karen L. Loewy Washington, District of
 Columbia
 
 
           Sonja
 D. Kerr Dallas, Texas
 
 
          
 Pelecanos Los Angeles, California
 
 
          
 Attorneys for Amici Curiae Mountain States Legal Foundation,
 Americans for Prosperity Foundation, Southeastern Legal
 Foundation, and Manhattan Institute: James Kerwin William E.
 Trachman Lakewood, Colorado
 
 
          
 Attorneys for Amici Curiae National Religious Broadcasters
 and Foundation for Moral Law: Brown Dunning Walker Fein
 Drusch PC David C. Walker Greenwood Village, Colorado
 
 
          
 Michael P. Farris Washington, District of Columbia
 
 
          
 Attorneys for Amici Curiae States of Arkansas, Alabama,
 Alaska, Georgia, Idaho, Indiana, Iowa, Kansas, Kentucky,
 Louisiana, Mississippi, Missouri, Montana, Nebraska, North
 Dakota, Ohio, South Carolina, South Dakota, Tennessee, Texas,
 Utah, Virginia, and West Virginia: Nicholas J. Bronni Dylan
 L. Jacobs Michael A. Cantrell Little Rock, Arkansas
 
 
           Nicole
 C. Hunt Lakewood, Colorado
 
 7
 
          
 Attorneys for Amici Curiae States of Massachusetts,
 Connecticut, Delaware, District of Columbia, Hawaii,
 Illinois, Maine, Maryland, Michigan, Minnesota, Nevada, New
 Jersey, New York, Oregon, Pennsylvania, Rhode Island,
 Vermont, and Washington: Adam M. Cambier Boston,
 Massachusetts
 
 
           Olson
 Grimsley Kawanabe Hinchcliff & Murray LLC Eric Olson
 Denver, Colorado
 
 
          
 Attorneys for Amici Curiae Tastries Bakery and Catharine
 Miller: Messall Law Firm, LLC Rebecca R. Messall Englewood,
 Colorado
 
 
          
 Attorneys for Amicus Curiae U.S. Representative Doug Lamborn:
 Consovoy McCarthy PLLC J. Michael Connolly Arlington,
 Virginia
 
 
           Telios
 Law PLLC Joseph B. Brown Theresa Sidebotham Monument,
 Colorado
 
 
          
 JUSTICE HART delivered the Opinion of the Court, in which
 CHIEF JUSTICE MARQUEZ, JUSTICE BOATRIGHT, and JUSTICE SAMOUR.
 JUSTICE GABRIEL, joined by JUSTICE HOOD and JUSTICE
 BERKENKOTTER, dissented.
 
 8
 
          
 OPINION
 
 
           HART,
 JUSTICE
 
 
          ¶1
 The underlying constitutional question this case raises has
 become the focus of intense public debate: How should
 governments balance the rights of transgender individuals to
 be free from discrimination in places of public accommodation
 with the rights of religious business owners when they are
 operating in the public market? We cannot answer that
 question however, because of a threshold issue of
 administrative law and statutory interpretation: Could the
 district court properly consider the claims of discrimination
 presented here? In light of this dispute's procedural
 journey, it could not.
 
 
          ¶2
 The dispute began when Autumn Scardina requested that
 Masterpiece Cakeshop, Inc., owned by Jack Phillips, make her
 a pink cake with blue frosting to celebrate her gender
 transition and identity as a transgender woman. Masterpiece
 refused, and Scardina filed an anti-discrimination claim with
 the Colorado Civil Rights Division ("the Division")
 under section 24-34-306, C.R.S. (2024). The Division found
 probable cause that discrimination occurred, and after the
 Division's conciliation efforts failed, the Colorado
 Civil Rights Commission ("the Commission") took
 jurisdiction to hold an administrative adjudication of the
 claim. Once it commenced a hearing as part of this
 administrative proceeding, the Commission was required,
 absent a settlement among all the parties, to issue an
 
 9
 
 order stating its conclusions and the reasons why its
 findings of fact supported those conclusions. §
 24-34-306(8).
 
 
          ¶3
 In the meantime, Phillips sued both the Division and the
 Commission in federal court, claiming that these state
 agencies were discriminating against him based on his
 religion by pursuing Scardina's claim. Scardina moved to
 intervene in the federal proceedings, but the district court
 denied that motion. As part of a confidential settlement of
 the federal case, the Division and the Commission
 agreed-without participation by Scardina-to dismiss
 Scardina's administrative complaint against Masterpiece
 and Phillips. Pursuant to this settlement, the Commission
 terminated the administrative adjudication, but it did not
 issue the required order explaining its reasons for the
 dismissal.
 
 
          ¶4
 Scardina could have appealed the Commission's decision to
 close the administrative adjudication without providing the
 statutorily mandated order but she did not. Instead, she
 brought her discrimination claim anew in the district court.
 The district court took up the case and, following a bench
 trial, determined that Phillips had violated section
 24-34-601, C.R.S. (2024), which prohibits discrimination in
 places of public accommodation, and imposed a fine. Phillips
 appealed, and the court of appeals affirmed the judgment. We
 granted certiorari
 
 10
 
 to determine, among other issues, whether Scardina properly
 filed her case in the district court.[1] We conclude that she did
 not.
 
 
          ¶5
 Colorado's Anti-Discrimination Act, §§
 24-34-301 to -707, C.R.S. (2024) ("CADA"), sets
 very specific constraints on when a district court can
 consider a claim of discrimination in a place of public
 accommodation. The statute is designed to permit the Division
 to investigate and potentially resolve such claims before
 permitting an aggrieved individual to pursue an action in
 district court. To that end, the version of section
 24-34-306(14), C.R.S. (2017), applicable at the time that
 Scardina filed her complaint required that a person exhaust
 any administrative remedies before filing an action in the
 district court.[2] And if the
 
 11
 
 prescribed times for filing an action in the district court
 pass, and the Commission decides to hear and resolve a
 complaint through an administrative adjudication, that claim
 is removed from the district court path entirely.
 
 
          ¶6
 Sections 24-34-306 and -307, C.R.S. (2024), set out these two
 paths: either (1) administrative exhaustion followed by an
 action in the court system under the specific circumstances
 delineated by statute, or (2) administrative review followed
 by an administrative adjudication and judicial appeal, if
 requested. Scardina pursued the latter, the administrative
 adjudication path. However, when the Commission denied her
 the hearing to which she was entitled by statute, she did not
 appeal that denial. That choice did not entitle her to pursue
 the alternate path of filing a district court action. Nothing
 in section 24-34-306 authorized her to file the claim anew in
 district court.
 
 
          ¶7
 Under these circumstances, we conclude that section 24-34-306
 did not permit the district court to hear this matter. We
 therefore vacate the decisions of the lower courts and
 dismiss this case. And, accordingly, we do not consider the
 merits of Scardina's CADA claim, nor whether
 Masterpiece's conduct was protected under the First
 Amendment.
 
 
          I.
 Facts and Procedural History
 
 
          ¶8
 On June 26, 2017, Scardina called Masterpiece Cakeshop and
 spoke with Jack Phillips's wife, who worked at the store.
 Scardina requested a pink birthday
 
 12
 
 cake with blue frosting and was told that Masterpiece would
 make such a cake. Scardina then explained that the cake was
 intended to celebrate her transition from male to female. At
 that point, she was informed that the shop was unlikely to
 make the cake "because of the message." The call
 disconnected, and when Scardina called back, she was again
 told that the shop would not make the cake. ¶9 Scardina
 filed a formal discrimination charge with the Division on
 July 21, 2017, alleging that Masterpiece Cakeshop, a place of
 public accommodation, had discriminated against her and
 refused service because she was transgender. Scardina's
 filing set in motion the Division's and the
 Commission's procedural deadlines described in section
 24-34-306.[3]
 
 
          ¶10
 First, under the version of section 24-34-306(11) applicable
 at the time, the agencies had 270 days from the date of her
 filing to issue a written notice of a formal hearing, or the
 Commission would lose jurisdiction over the case and Scardina
 could file her claim in the district court. §
 24-34-306(11), C.R.S. (2017). However, over the course of the
 proceeding, both parties (Scardina and
 
 13
 
 Masterpiece) received 90-day extensions as permitted by
 statute, ultimately moving that deadline to October 13,
 2018.[4]
 
 
          ¶11
 The Division investigated Scardina's claim and, almost a
 year later, on June 28, 2018, the Division's Director
 issued a probable cause determination that Masterpiece had
 discriminated against Scardina on the basis of her
 transgender status. The parties entered compulsory mediation,
 as required by section 24-34-306(2)(b)(II).
 
 
          ¶12
 Eventually, the Director determined that mediation was futile
 and referred the matter to the Commission, in accordance with
 statutory procedure. § 24-34-306(4). The Commission
 issued a Notice of Hearing and Formal Complaint
 ("Notice") to Phillips and Masterpiece on October
 9, 2018, just days before the October 13 deadline. The Notice
 informed Phillips that he was to appear before an
 Administrative Law Judge ("ALJ") on February 4,
 2019. In that administrative proceeding, the ALJ would
 determine whether Phillips violated
 
 14
 
 CADA by refusing to bake the cake that Scardina had
 requested. This Notice triggered another deadline in section
 24-34-306(11): The Commission now had 120 days to commence a
 hearing. If the Commission failed to do so by February 6,
 2019, it would lose jurisdiction over the case. §
 24-34-306(11).
 
 
          ¶13
 Shortly after receiving the Notice, on October 23, Phillips
 filed a complaint in federal court, alleging violations of
 his First Amendment rights by the Division, the Commission,
 and other Colorado state officials. The complaint requested
 injunctive, declaratory, compensatory, and punitive relief.
 Phillips did not name Scardina as a party.
 
 
          ¶14
 Meanwhile, in the state administrative proceeding, the ALJ
 granted Scardina's motion to intervene through
 independent counsel. The parties jointly requested that the
 ALJ treat the February 4 hearing as a procedural
 "commencement hearing," where the ALJ could address
 procedural issues and reschedule the merits hearing for a
 later date. The ALJ granted the request, and the parties
 appeared before the ALJ on February 4, 2019, meeting section
 24-34-306(11)'s requirement that the Commission commence
 a hearing by, at the latest, February 6, 2019.
 
 
          ¶15
 Days after the February 4 hearing, Scardina attempted to
 intervene in the federal suit pursuant to Fed.R.Civ.P. 24.
 Phillips opposed her motion, and the Commission took no
 position. The court sided with Phillips, reasoning that
 
 15
 
 intervention was unnecessary because the Commission would
 represent Scardina's interests in the federal litigation.
 Masterpiece Cakeshop Inc. v. Elenis, No.
 18-cv-02074-WYD-STV, 2019 WL 9514601, at *3 (D. Colo. Feb.
 28, 2019). Scardina was thus unable to participate in the
 federal suit.
 
 
          ¶16
 On March 5, the federal district court announced that the
 parties to the federal case (Masterpiece and the Colorado
 government) had entered a confidential settlement. Scardina
 was not informed of the terms of that settlement, nor are
 they part of the record in this case. In an emergency
 meeting, the Commission dismissed Scardina's charge
 against Masterpiece and requested that the ALJ close the
 case. The ALJ filed a notice of administrative closure on
 March 7 and vacated the August merits hearing.
 
 
          ¶17
 On March 22, the Commission filed a closure order noting that
 "the Commission members present [at the March 5 meeting]
 unanimously voted to dismiss the Notice of Hearing and Formal
 Complaint" against Masterpiece and further stating that
 the case was "now formally closed and all administrative
 proceedings under part 3 of article 34 of title 24, C.R.S.
 have been exhausted." The order did not mention the
 confidential settlement in the federal case or offer any
 explanation for the closure.
 
 
          ¶18
 On June 5, Scardina filed her discrimination claim anew in a
 state district court, asserting that the court was permitted
 to hear her claim under section
 
 16
 
 24-34-306 because she had exhausted her administrative
 remedies. Scardina's discrimination claim proceeded to a
 bench trial. The trial court ultimately found that
 Masterpiece had discriminated against Scardina in a place of
 public accommodation, in violation of CADA. It further held
 that CADA did not violate the First Amendment because it did
 not compel speech or offend the right to free exercise of
 religion. The trial court granted the remedy described in
 section 24-34-602(1)(a), C.R.S. (2017), a $500 fine, but
 declined to grant any of the other forms of relief that
 Scardina requested in her complaint, such as damages or
 attorney fees.
 
 
          ¶19
 Masterpiece appealed, and a division of the court of appeals
 affirmed the district court's order. Scardina v.
 Masterpiece Cakeshop, Inc., 2023 COA 8, ¶ 93, 528
 P.3d 926, 943. Masterpiece sought, and we granted,
 certiorari.
 
 
          II.
 Applicable Law
 
 
          ¶20
 The statutory scheme that establishes the two paths for
 vindication of discrimination claims under CADA, including in
 places of public accommodation is set forth in section
 24-34-306. As we will explain, that statute sets out a path
 for administrative adjudication and a path for judicial
 adjudication. While both paths start with administrative
 review in the Division, the statute makes it clear that once
 a complainant is on one adjudicatory path (either with the
 Commission or in the district court) there is no option to
 jump to the other.
 
 17
 
          ¶21
 Masterpiece has argued consistently throughout these
 proceedings that Scardina could not properly bring her claim
 before the district court. We reject the specific argument
 presented by Masterpiece: that an appeal pursuant to section
 24-34-307, C.R.S. (2024), is part of the administrative
 exhaustion required by section 24-34-306(14). But the
 parties' dispute over the question of whether the
 district court could properly hear Scardina's claim under
 section 24-34-306 puts that question squarely before
 us.[5]
 
 
          ¶22
 The details involved in answering this question concern
 matters of statutory interpretation that we review de
 novo. McCoy v. People, 2019 CO 44, ¶ 37, 442
 P.3d 379, 389. Our goal in reviewing a statute is to give
 effect to the General Assembly's intent. Arvada Vill.
 Gardens LP v. Garate, 2023 CO 24, ¶ 9, 529 P.3d
 105, 107. If the language is unambiguous, we apply it as
 written. Delta Air Lines, Inc. v. Scholle, 2021 CO
 20, ¶ 13, 484 P.3d 695, 699.
 
 18
 
          A.
 The Statutory Scheme Prohibiting Discrimination in Places of
 Public Accommodation
 
 
          ¶23
 CADA prohibits discrimination in places of public
 accommodations on the basis of, among other things, gender
 identity and gender expression. § 24-34-601(2)(a). If a
 person (the "complainant" or "charging
 party") believes that they have been discriminated
 against in violation of this prohibition, they have two legal
 options.
 
 
          ¶24
 First, they can seek the imposition of a fine in a
 "court of competent jurisdiction in the county where the
 violation occurred." § 24-34-602(1)(a). This remedy
 is exclusive and is "an alternative to that authorized
 by section 24-34-306(9)." § 24-34-602(3). The
 referenced "alternative"-relief under section
 24-34-306-begins with an administrative review process in the
 Division and then leads to adjudication before the
 Commission[6] or, when specific statutory conditions are
 met, adjudication in a district court. Once the complainant
 starts down the administrative adjudicatory path before the
 Commission, appellate
 
 19
 
 review is then available under section 24-34-307. If,
 instead, one of the paths to adjudication in the district
 court is satisfied, and the complainant elects that route,
 appellate review is eventually available if any party wishes
 to challenge the district court's final order, in
 accordance with the normal rules of appellate procedure.
 
 
          ¶25
 The question we confront in this case is whether the statute
 that sets out these two paths following administrative
 review-either administrative adjudication or judicial
 adjudication-permits shifting from one path to the other. We
 conclude that it does not.
 
 
          1.
 Pursuing a Claim Through Administrative Review and
 Administrative Adjudication
 
 
          ¶26
 When a complainant files a charge of discrimination with the
 Division, the Division's Director and staff are required
 to "make a prompt investigation of the charge,"
 which can include issuing subpoenas to witnesses and
 compelling the production of documents and records. §
 24-34-306(2)(a). The Director then determines "as
 promptly as possible" whether "probable cause
 exists for crediting the allegations of the charge."
 § 24-34-306(2)(b).
 
 
          ¶27
 If the Director finds no probable cause, they must dismiss
 the charge, notify the parties of the decision, and state in
 that notice that the complainant may (1) appeal the dismissal
 to the Commission within ten days, or (2) file a civil action
 in the district court within ninety days. §
 24-34-306(2)(b)(I)(A)-(B). If the complainant chooses the
 first option, and the Commission ultimately agrees with
 
 20
 
 the Director and dismisses the appeal, the complainant again
 has ninety days to file an action in district court. §
 24-34-306(2)(b)(I)(B). Thus, as we discuss further below, a
 no-probable-cause finding (or a Commission dismissal
 affirming that finding) is one of the triggers that permits
 the complainant to pursue adjudication of their claim in
 district court. § 24-34-306(2)(b)(I)(A)-(B); see,
 e.g., Demetry v. Colo. Civ. Rts. Comm'n,
 752 P.2d 1070, 1071-72 (Colo.App. 1988) (holding that a
 complainant whose administrative proceeding ended with a
 no-probable-cause finding could not challenge that finding
 directly in the court of appeals, but rather should have
 turned to district court).
 
 
          ¶28
 If, however, the Director does find probable cause,
 they must "serve the respondent with written notice
 stating with specificity the legal authority and jurisdiction
 of the commission and the matters of fact and law
 asserted." § 24-34-306(2)(b)(II). Following that
 service, the Director and their designees are obligated to
 "order the charging party and the respondent to
 participate in compulsory mediation" and "shall
 endeavor to eliminate the discriminatory or unfair practice
 by conference, conciliation, and persuasion."
 Id.
 
 
          ¶29
 At this stage in the administrative process, agency
 regulations permit the Director to "resolve the charge
 in the public interest by entering into a conciliation
 agreement with the Respondent." Dep't of Regul.
 Agencies, 3 Colo. Code Regs. 708-1:10.5(D)(5) (2022). As long
 as the Director believes the conciliation terms are
 
 21
 
 reasonable-and even if the charging party does not accept
 those terms-the Director may then dismiss the charge.
 Id. The charging party may challenge the
 Director's decision by appealing to the Commission,
 id., and, if that challenge fails, filing an appeal
 in the court of appeals, see Agnello v. Adolph Coors
 Co., 689 P.2d 1162, 1165 (Colo.App. 1984) (upholding a
 settlement agreement the Division entered into during the
 conciliation process because it ended an employer's
 discriminatory practice, even though the complainant did not
 expressly agree to the settlement).
 
 
          ¶30
 The Director can also determine that the mediation efforts
 are "futile," in which case the Division must
 report the failure of mediation to the Commission. §
 24-34-306(4). At that point, the Commission may choose to
 take no action at all. If that is the Commission's
 choice, then the administrative process has been exhausted,
 and, as we explain in more detail below, the complainant can
 request a right to sue letter and pursue their claim in
 district court.
 
 
          ¶31
 Alternatively, "[i]f the [C]ommission determines that
 the circumstances warrant" a hearing, it can issue
 "a written notice and complaint requiring the respondent
 to answer the charges at a formal hearing before the
 [C]ommission, a
 
 22
 
 commissioner, or an [ALJ]."[7] Id. The notice must
 state "the time, place, and nature of the hearing, the
 legal authority and jurisdiction under which it is to be
 held, and the matters of fact and law asserted."
 Id. That hearing must commence "within [120]
 days after the service of [the] written notice and
 complaint." Id.
 
 
          ¶32
 Throughout this process in the Division and continuing into
 the hearing before the Commission, the complainant is a
 "party." See § 24-4-102(11), C.R.S.
 (2024) (explaining that "[p]arty" for purposes of
 agency adjudications includes "any person or agency
 named or admitted as a party"); Dep't of Regul.
 Agencies, 3 Colo. Code Regs. 708-1:10.2(W) (2023) (defining
 "[p]arty" as "the Charging Party/Complainant
 and/or the Respondent"); see also Dep't of
 Regul. Agencies, 3 Colo. Code Regs. 708-1:10.2(Y) (2014)
 (defining "[p]arty" in the same manner at the time
 these proceedings were taking place). Parties to the
 Commission's adjudicatory proceeding are entitled to an
 array of protections and processes.
 
 
          ¶33
 Indeed, CADA is very specific about what an administrative
 adjudication must include. Section 24-34-306(8) commands that
 the hearing comply with the general requirements for agency
 adjudicatory proceedings described in section 24-4-105,
 C.R.S. (2024). Those requirements include party input in
 scheduling, the
 
 23
 
 issuance of subpoenas, the option to be represented by
 counsel, and other procedures that mirror adjudication in the
 courts. § 24-4-105(2)(a), (4)(a), (9)(a). "[E]very
 party to the proceeding shall have the right to
 present his case or defense by oral and documentary evidence,
 to submit rebuttal evidence, and to conduct such
 cross-examination as may be required for a full and true
 disclosure of the facts." § 24-4-105(7) (emphasis
 added). In addition to its references to the statute that
 describes the general requirements for agency adjudications,
 section 24-34-306 includes its own procedures: discovery
 under the Colorado rules of civil procedure (subsection (5)),
 the possibility of the respondent's default with
 testimony by the complainant (subsection (6)), and the power
 to amend filings (subsection (7)).
 
 
          ¶34
 Moreover, although a complainant is not required to hire a
 private attorney for the hearing because the government
 presents "[t]he case in support of the complaint,"
 § 24-34-306(8), the complainant has a number of
 statutory and regulatory rights during the hearing process.
 In addition to the rights mentioned above, the complainant is
 also entitled to "reasonably and fairly amend any
 complaint." § 24-34-306(7). Further, at the time
 Scardina filed her complaint, the Commission's General
 Rules Governing Hearing Procedures provided that "[i]f a
 party presents a motion for summary judgment, the
 presentation of the motion with supporting evidence may
 constitute the commencement of the hearing."
 
 24
 
 Dep't of Regul. Agencies, 3 Colo. Code Regs.
 708-1:10.8(6) (2014). And if the complainant wants to hire an
 attorney, they can ask the ALJ for permission to additionally
 "intervene through counsel to present oral testimony or
 other evidence and to examine and cross examine
 witnesses." Dep't of Regul. Agencies, 3 Colo. Code
 Regs. 708-1:10.8(A)(5) &(B) (2014). These statutory and
 regulatory procedures create an administrative adjudicatory
 process with significant formality and party protections.
 
 
          ¶35
 If the adjudicator ultimately decides that the respondent
 engaged in discriminatory acts in violation of CADA, the
 Commission "shall issue and cause to be served upon the
 respondent an order requiring such respondent to cease and
 desist from such discriminatory or unfair practice."
 § 24-34-306(9). Alternatively, if the adjudicator
 determines that no discrimination occurred, the Commission
 must issue an order dismissing the complaint. §
 24-34-306(10). In either case, the adjudicator's written
 decision "shall . . . include a statement of the reasons
 why the findings of fact lead to the conclusions," a
 step of specificity that, once again, goes beyond the
 "findings and conclusions" typically required of
 other administrative adjudicatory decisions. Compare
 § 24-34-306(8), (10), with §
 24-4-105(14)(a).
 
 
          ¶36
 Critically, "[a]ny complainant or respondent claiming to
 be aggrieved by a final order of the [C]ommission, including
 a refusal to issue an order, may obtain
 
 25
 
 judicial review thereof." § 24-34-307(1). Such
 review "shall be brought in the court of appeals."
 § 24-34-307(2).
 
 
          ¶37
 In sum, a complainant seeking to file a charge of
 discrimination in a place of public accommodation generally
 begins with the Division. Under CADA, the Division has two
 opportunities to dispose of that charge over the
 complainant's objection: (1) the Division may find no
 probable cause for the charge, § 24-34-306(2)(b); or (2)
 the Division may impose a conciliation agreement with the
 respondent's participation, even over the objection of
 the complainant, provided that the Division finds the terms
 reasonable. Dep't of Regul. Agencies, 3 Colo. Code Regs.
 708-1:10.5(D)(5) (2022).
 
 
          ¶38
 The Commission also has an opportunity to dispose of the
 charge with no action. If the Division finds probable cause
 and is unable to establish a reasonable conciliation
 agreement, the Commission may unilaterally terminate the
 administrative process by choosing not to issue a notice of
 hearing and complaint. § 24-34-306(4).
 
 
          ¶39
 Once the Commission issues a notice of hearing and complaint
 under section 24-34-306(4), however, it has decided to demand
 that the respondent answer the charges originally filed by
 the complainant. Accordingly, sections 24-34-306(8), (9), and
 (10) require the Commission to complete the process it has
 started by, among other things, issuing an order consistent
 with the adjudicator's
 
 26
 
 written decision stating why the adjudicator's findings
 of fact led to its conclusions. This statutory scheme does
 not foreclose the parties from agreeing to settle their
 dispute before completion of the agency adjudication,
 something that apparently occurs with some frequency. Colo.
 Off. of the State Auditor, Management of Civil Rights
 Discrimination Complaints 1, 9 (Aug. 2019), https://
 leg.colorado.gov/sites/default/files/documents/audits/1820p_civil_rights.pdf
 [https://perma.cc/49PA-36TK] (noting that all eleven cases
 the Commission set for hearing in Fiscal Year 2018 settled
 before the hearing took place).
 
 
          ¶40
 But neither the statute nor the regulations permit the
 Commission to settle a complainant's charge of
 discrimination with a respondent of its own accord without
 the complainant's participation. Instead, absent an
 agreement among all the parties, section 24-34-306(4)-(10)
 requires the process the statute describes. If the parties do
 not receive that process, or if any party finds the results
 unfavorable, they may appeal pursuant to section 24-34-307.
 
 
          2.
 Pursuing a Claim Through Administrative Review and District
 Court Adjudication
 
 
          ¶41
 Section 24-34-306 provides four well-defined off-ramps from
 initial administrative review by the Division to merits
 litigation in the district court.
 
 
          ¶42
 Before any of those off-ramps is available, however, section
 24-34-306(14) explains that "[n]o person may file a
 civil action in a district court" based on conduct
 prohibited by the statute "without first exhausting the
 proceedings and
 
 27
 
 remedies available to him under this part 3 unless he shows .
 . . his ill health which is of such a nature that pursuing
 administrative remedies would not provide timely and
 reasonable relief and would cause irreparable harm."
 This exhaustion requirement is designed to ensure that the
 Division has an opportunity to investigate and resolve the
 claim before a complainant turns to the courts for
 resolution.[8] Exhaustion requirements are standard in
 agency practice and serve the important purposes of
 "protecting agency authority in the administrative
 process and 'promoting] efficiency' in the resolution
 of claims." Stewart v. lancu, 912 F.3d 693, 699
 (4th Cir. 2019) (alteration in original) (quoting
 Woodford v. Ngo, 548 U.S. 81, 89 (2006)) (explaining
 the importance of administrative exhaustion requirements in
 federal Title VII claims, upon which CADA's procedures
 are based).
 
 
          ¶43
 However, the General Assembly recognized that agency
 investigation and conciliation efforts can be inefficient and
 lengthy, so it established several
 
 28
 
 circumstances that have the effect of exhaustion under
 section 24-34-306(14) and permit the district court to hear a
 claim. The earliest off-ramp to the district court is one a
 complainant can take any time after 180 days under section
 24-34-306(15). Under that subsection, after 180 days have
 passed since a charge was initially filed, if the complainant
 requests a right to sue letter, "the division shall
 promptly grant" that request-so long as the Commission
 has not served a notice of a formal hearing, thereby
 signaling that it will take up the claim. Id. The
 grant of a right to sue letter "shall constitute final
 agency action and exhaustion of administrative
 remedies." Id. The complainant then has ninety
 days to file following receipt of the right to sue letter, or
 an action in the district court is barred. §
 24-34-306(11).[9]
 
 
          ¶44
 A second path to the district court opens if the Director
 concludes that there is no probable cause to support the
 claim. In this situation, section 24-34-306(2) requires the
 Director to notify the charging party that they can file
 "a civil action in a district court in this state based
 on the alleged discriminatory or unfair practice
 
 29
 
 that was the subject of the charge filed with the
 commission," but that such a claim must be filed within
 ninety days. The statute also clarifies that failure to
 follow this timeline means that "the action will be
 barred, and no district court shall have jurisdiction to hear
 the action." § 24-34-306(2)(b)(I)(C).
 
 
          ¶45
 Third, under the version of the statute in effect at the time
 of Scardina's complaint, if the Director did not serve
 the respondent with a written notice of a formal hearing
 under section 24-34-306(4) within 270 days of the initial
 charge being filed, the Commission's jurisdiction ceased,
 and the charging party could file a complaint in the district
 court. § 24-34-306(11). The parties could, "for
 good cause," obtain extensions of this 270-day timeline,
 not to exceed ninety days per party or 180 days overall
 (meaning that the timeline could not, in any circumstance, be
 extended past 450 days). Id.[10] If that
 timeline passed without the Commission taking jurisdiction by
 serving notice of a formal hearing, the Commission lost its
 jurisdiction over the complaint. In that case, a district
 court complaint must be filed within ninety days of the
 Commission's loss of jurisdiction, or the action would be
 barred in the district court. Id.
 
 
          ¶46
 Fourth, if the Commission does not hold a hearing within 120
 days following the issuance of a notice of a formal hearing
 under section 24-34-306(4),
 
 30
 
 the Commission loses jurisdiction, and the charging party may
 file a complaint in the district court. § 24-34-306(11).
 As with service of the written notice, the parties may ask
 for extensions to this time for good cause, not to exceed
 ninety days per party or 180 days collectively. §
 24-34-306(11). The charging party has ninety days following
 the deadline to file an action in the district court, or the
 action is barred in the district court. Id.
 
 
          ¶47
 These provisions of section 24-34-306 are unambiguous.
 Subsections 306(2), 306(11), and 306(15) establish the
 General Assembly's intent to impose a strict timeline on
 when complainants may pursue their case in the district court
 following either (1) a finding of no probable cause by the
 Director, or (2) termination of the Commission's
 exclusive powers over a claim for failure to meet a statutory
 deadline. Each provision describes a situation where the
 district court may consider a claim of discrimination because
 the administrative agencies' ability to do so has ceased,
 with the "apparent purpose of . . . avoid[ing]
 duplicative and possibly conflicting attempts to pursue
 relief both in the district court and before the
 Commission." Cont'l Title Co. v. Dist. Ct.,
 645 P.2d 1310, 1316 (Colo. 1982).
 
 
          ¶48
 Significantly, the specificity of the conditions each
 provision sets forth necessarily implies that complainants
 may not file absent those conditions. It would make little
 sense for the General Assembly to restrict access to district
 
 31
 
 courts to complainants who find themselves in certain
 circumstances if litigants had a general right, external to
 the statute, to pursue their case in the district court
 absent those circumstances.
 
 
          III.
 Application
 
 
          ¶49
 Irrespective of the merits of Scardina's claim, the
 district court here was not permitted to consider her case.
 Masterpiece has argued as much throughout this litigation,
 though for reasons slightly different than those we rest on
 here. When we are interpreting statutes, we are not obligated
 to adopt the parties' interpretations that are contrary
 to the text of the statute and the intent of the General
 Assembly. Rather, we have an obligation to interpret and
 apply the law. In this case, having been steered in this
 direction by Masterpiece's arguments that Scardina
 improperly filed her claim anew in the district court, we
 must address the fact that section 24-34-306 did not
 authorize the district court to hear this case. As noted
 above, section 24-34-306 authorizes complainants to pursue
 their case in the district court in four circumstances. The
 proceedings here did not trigger any of those circumstances.
 
 
          ¶50
 First, Scardina could have requested a right to sue letter
 any time after 180 days from when she filed her initial
 charge, up to the day the Commission served the notice of a
 formal hearing. § 24-34-306(11), (15). Scardina never
 requested or
 
 32
 
 received such a letter, so she could not have filed an action
 in the district court under this provision.
 
 
          ¶51
 Second, section 24-34-306(2) permits filing an action in the
 district court when the Director makes an initial finding of
 no probable cause. But the Director here found probable cause
 to investigate Scardina's claim, so Scardina could not
 have filed an action pursuant to section 24-34-306(2).
 
 
          ¶52
 Third, section 24-34-306(11) at that time permitted filing an
 action in the district court when the Commission failed to
 issue a notice of hearing within 270 days of the initial
 charge. While the Commission sent the notice more than 270
 days after the initial charge, the parties had obtained
 extensions (pursuant to section 24-34-306(11)) which placed
 the October 8 notice of hearing date within the statutory
 deadline.
 
 
          ¶53
 Finally, section 24-34-306(11) permits filing an action in
 the district court when the Commission fails to commence a
 hearing within 120 days of the initial notice of hearing. In
 this case, an ALJ held a commencement hearing within the
 statutory deadline. Though the hearing was not substantive,
 it was still "a hearing," satisfying section
 24-34-306(11)'s requirement and ensuring that the
 Commission retained jurisdiction over the case.
 
 
          ¶54
 At no point did the Commission's or Scardina's
 actions trigger one of the avenues that section 24-34-306
 provides for filing a district court case. But Scardina
 
 33
 
 argues, and the court of appeals concluded, that the order
 the Commission issued when it dismissed the formal complaint
 against Masterpiece allowed Scardina to bring her claim in
 the district court.
 
 
          ¶55
 One version of the argument Scardina makes is that the
 closure order satisfied subsection 306(14)'s
 administrative exhaustion requirement, thereby giving her the
 right to file an action in the district court, because the
 order stated that the case was "now formally closed and
 all administrative proceedings under part 3 of article 34 of
 title 24, C.R.S. have been exhausted." The flaw in this
 argument is that subsection 306(14) does not grant an
 affirmative right-as it might if it were worded like
 subsections 306(2) and 306(11), which explicitly permit
 complainants to file a civil action in the district court
 under the circumstances those statutes describe. Instead,
 subsection 306(14) explains that administrative exhaustion is
 a prerequisite to a district court case. Compare
 § 24-34-306(11), C.R.S. (2017) ("[i]f written
 notice that a formal hearing will be held is not served
 within two hundred seventy days after the filing of the
 charge . . . the jurisdiction of the commission over the
 complaint shall cease, and the complainant may seek the
 relief authorized . . . by filing a civil action in the
 district court for the district in which the alleged
 discriminatory or unfair practice occurred"),
 with § 24-34-306(14), C.R.S. (2017) ("[n]o
 person may file a civil action in a district court in this
 state based on an alleged discriminatory or unfair practice .
 . . without first
 
 34
 
 exhausting the proceedings and remedies available to him
 under this part 3 ...."). Thus, administrative
 exhaustion is necessary, but not sufficient. As explained
 above, subsection 306 sets out additional requirements before
 the district court may hear a claim.
 
 
          ¶56
 Another version of this argument is that the closure order
 was effectively a right to sue letter. Again, this argument
 fails. Section 24-34-306(15) explicitly states that a right
 to sue letter can be requested "at any time prior to
 service of a notice and complaint pursuant to subsection (4)
 of this section." In other words, once the Commission
 has taken up a claim by serving notice of a hearing, a
 complainant cannot request and neither the Division nor the
 Commission can issue a right to sue letter. At that point,
 the statute provides unambiguously that the path to the
 district court is closed, with only one exception: if the
 hearing is not held promptly. § 24-34-306(11).
 
 
          ¶57
 A third version of the argument is that the Commission's
 order was not a final order because a final order must do
 more than this summary dismissal did. See Scardina,
 ¶24, 528 P.3d at 933 ("A final judgment is one
 'which ends the particular action in which it is entered,
 leaving nothing further for the court pronouncing it to do in
 order to completely determine the rights of the parties
 involved.'" (quoting D.H. v. People, 561
 P.2d 5, 6 (Colo. 1977))). Even assuming we agreed with this
 characterization of the Commission's order, section
 24-34-307(1)
 
 35
 
 also permits a "complainant" to challenge the
 Commission's "refusal to issue an order" in the
 court of appeals. Under these circumstances, the
 Commission's closure order represents the culmination of
 just such a refusal.
 
 
          ¶58
 Specifically, the Commission entered into a confidential
 settlement in federal court, without Scardina's
 participation, in possible violation of its statutory
 obligation to hold a merits hearing on a discrimination claim
 and to issue an order resolving that claim in accordance with
 section 24-34-306(8)-(10). This occurred after the Commission
 notified the respondent that there would be an ALJ
 adjudication and after the ALJ granted Scardina's motion
 to intervene through counsel in that adjudication. Thus,
 Scardina was entitled to the administrative processes
 described in sections 24-34-306(5)-(10), unless she settled
 the case with Masterpiece. The Commission's issuance of a
 closure order deprived her of that process and any potential
 administrative remedy or settlement.
 
 
          ¶59
 We conclude that these circumstances amount to the kind of
 "refusal to issue an order" that section
 24-34-307(1) contemplates. Accordingly, Scardina had a
 statutorily established path to challenge the
 Commission's actions: she could have turned to the court
 of appeals to contest the Commission's dismissal of her
 case as part of a binding settlement in federal court, where
 she was not a party. We express no view on the merits of
 these claims; we only acknowledge that Scardina possessed an
 avenue for judicial review in the court of appeals.
 
 36
 
          IV.
 Conclusion
 
 
          ¶60
 CADA is not ambiguous. It is quite clear about when a
 litigant may file an action in the district court. The
 litigant can ask for and receive a right to sue letter; the
 Division can issue a finding of no probable cause; the
 Commission can fail to issue a notice of a formal hearing
 within 270 days of the filing of a charge; or the Commission,
 having noticed a hearing, can delay the hearing more than 120
 days. In the absence of those specific circumstances, a
 litigant cannot file a CADA action in the district court.
 
 
          ¶61
 None of the circumstances that permit an action in the
 district court occurred here. We therefore vacate both the
 division's and the district court's orders and
 dismiss this case. In so doing, we express no opinion about
 the merits of Scardina's claims, and nothing about
 today's holding alters the protections afforded by CADA.
 
 
          ¶62
 JUSTICE HART delivered the Opinion of the Court, in which
 CHIEF JUSTICE MARQUEZ, JUSTICE BOATRIGHT, and JUSTICE SAMOUR
 joined. JUSTICE GABRIEL, joined by JUSTICE HOOD and JUSTICE
 BERKENKOTTER, dissented.
 
 37
 
          
 JUSTICE GABRIEL, joined by JUSTICE HOOD and JUSTICE
 BERKENKOTTER, dissenting.
 
 
          ¶63
 Autumn Scardina called Masterpiece Cakeshop, Inc. to order a
 custom birthday cake. Specifically, she asked if Masterpiece
 could make her a pink cake with blue frosting, a type of cake
 that Masterpiece's co-owner, Jack Phillips, later agreed
 has no inherent meaning and expresses no message. Masterpiece
 agreed to make the cake. But then, Scardina said that the
 cake reflected the fact that she had come out as transgender
 on her birthday. At that point, Masterpiece refused to make
 the cake.
 
 
          ¶64
 On these undisputed facts, every factfinder and judicial
 officer to have heard this case concluded that (1)
 Masterpiece's conduct violated the Colorado
 Antidiscrimination Act, §§ 24-34-601 to -605,
 C.R.S. (2024) ("CADA"), because but for
 Scardina's protected status, Masterpiece would have made
 the cake; and (2) enforcing CADA in these circumstances would
 not violate Phillips's rights to free speech or the free
 exercise of his religious beliefs. Masterpiece then came to
 this court, asking us to reverse those rulings.
 
 
          ¶65
 The majority now declines to reach the merits of this case.
 Instead, it erroneously gives Masterpiece and Phillips a
 procedural pass. It does so by concluding that the district
 court lacked the authority to hear Scardina's case,
 relying on reasoning that no party presented in this case
 (even after we issued an order requiring supplemental
 briefing on the question of the court's authority) and
 
 38
 
 all but ignoring the argument that the parties actually
 presented to us, namely, that Scardina had failed to exhaust
 her administrative remedies. (To the extent that the majority
 addresses the exhaustion argument presented by Masterpiece
 and Phillips, it rejects that argument. Maj. op. ¶¶
 21, 42 n.8.)
 
 
          ¶66
 The ramifications of the majority's ruling are troubling
 on many levels. Procedurally, the majority adopts an
 unprecedented administrative regime under which, once a
 merits hearing is set, (1) a district court can never hear
 the matter; and (2) an administrative agency may never settle
 the matter over a claimant's objection, no matter how
 unreasonable that objection may be, but instead must litigate
 the matter to its conclusion. In my view, neither law nor
 sound policy supports such a conclusion.
 
 
          ¶67
 Substantively, the majority's ruling throws Scardina
 completely out of court and deprives her of the opportunity
 to seek a remedy for alleged discriminatory conduct based on
 a novel interpretation of law that no party asserted and, to
 my knowledge, no court has adopted. Moreover, although the
 majority rules solely on procedural grounds, I am concerned
 that Masterpiece and Phillips will construe today's
 ruling as a vindication of their refusal to sell
 non-expressive products with no intrinsic meaning to
 customers who are members of a protected class (here, the
 LGBTQ+ community) if Phillips opposes the purpose for which
 the customers will
 
 39
 
 use the products. Such a claim, though unfounded, could
 detrimentally impact those affected by such conduct.
 
 
          ¶68
 Because I have significant concerns about the foregoing
 substantive and procedural consequences of the majority's
 ruling, I respectfully dissent.
 
 
          I.
 Factual and Procedural Background
 
 
          ¶69
 Scardina called Masterpiece to order a cake.
 Masterpiece's co-owner and Phillips's wife, Debra,
 answered the phone. Scardina told Ms. Phillips that she
 wanted to purchase a custom birthday cake for six to eight
 people and that she wanted the cake to be pink with blue
 frosting. She did not request that the cake have any words or
 symbols. Ms. Phillips responded that Masterpiece could make
 that cake in the time frame requested.
 
 
          ¶70
 Scardina thanked Ms. Phillips and then explained that the
 design reflected the fact that Scardina had transitioned from
 male to female and had come out as transgender on her
 birthday. At this point, Ms. Phillips changed her position
 and stated that Masterpiece could not make the requested
 cake. Scardina asked Ms. Phillips to repeat what she had said
 so that Scardina's brother, with whom she was riding in a
 car, could hear it. At that point, Ms. Phillips went to get
 Phillips, but the call disconnected before Phillips could get
 on the phone.
 
 
          ¶71
 Scardina immediately called back, and she spoke with the
 Phillips's daughter, Lisa Eldfrick. Scardina reiterated
 her request for a custom pink cake
 
 40
 
 with blue frosting, and she repeated that she was requesting
 this cake because her birthday coincided with the date on
 which she came out as transgender. Ms. Eldfrick responded
 that Masterpiece could not make the requested cake.
 
 
          ¶72
 Although Phillips never spoke to Scardina, he later explained
 that because of his religious beliefs, he cannot design cakes
 that promote sex changes, gender transitions, or "the
 idea that a person's sex is anything other than an
 immutable God-given biological reality." He thus
 confirmed that he could not make the requested cake for
 Scardina, even though he conceded that a pink cake with blue
 frosting itself has no "particular inherent
 meaning" and does not express any message. It appears
 undisputed that Phillips would have made the same pink and
 blue cake for other customers and would have sold an
 identical, pre-made cake (as opposed to a custom-made cake)
 to Scardina, even if she had disclosed her intended use of
 the cake.
 
 
          ¶73
 On July 21, 2017, Scardina filed a charge with the Colorado
 Civil Rights Division (the "Division"), alleging
 that Masterpiece and Phillips had violated CADA by refusing
 to sell her a custom pink cake with blue frosting because of
 her status as a transgender woman. The Division investigated
 and on June 28, 2018, found probable cause to conclude that
 Masterpiece's and Phillips's conduct violated CADA
 because they had refused to serve Scardina based on her
 
 41
 
 transgender status. The Division then ordered the parties to
 mediate, but the mediation was ultimately unsuccessful.
 
 
          ¶74
 Thereafter, on August 14, 2018, Masterpiece and Phillips sued
 the director and members of the Division, among others, in
 federal court. Then, two months later, on October 9, 2018,
 the Commission filed and served on Masterpiece and Phillips a
 Notice of Hearing and Formal Complaint seeking equitable
 relief. This notice was timely, given that the parties had
 requested extensions of the deadline for issuing the notice,
 which extensions the Colorado Civil Rights Commission (the
 "Commission") was authorized to grant under the
 version of CADA then in effect. See §
 24-34-306(11), C.R.S. (2019).
 
 
          ¶75
 Shortly after the Commission filed its Notice of Hearing and
 Formal Complaint, Scardina filed a motion for leave to
 intervene in the administrative proceeding, and the
 Commission granted that motion. Notably, as an intervenor,
 Scardina could not bring a claim in her individual capacity,
 but her counsel could present oral testimony or other
 evidence and could examine and cross-examine witnesses at the
 hearing on the merits, if any, in this matter. Dep't of
 Regul. Agencies, 3 Colo. Code Regs. 708-1:10.7(A)(5) (2023)
 (previously numbered 708-1:10.8(A)(5)).
 
 
          ¶76
 Thereafter, on February 4, 2019, the Commission conducted
 what it called a "Commencement Hearing" and set the
 merits hearing for August 28, 2019. The
 
 42
 
 parties apparently agreed to a Commencement Hearing to
 satisfy the 120-day deadline for commencing a hearing after a
 notice of hearing and formal complaint are served. §
 24-34-306(4), C.R.S. (2024) (unless otherwise noted,
 citations to section 24-34-306 are to those portions of the
 current version of the statute that were also in effect at
 the times relevant to this case).
 
 
          ¶77
 In the meantime, Masterpiece's federal lawsuit proceeded,
 and on February 8, 2019, Scardina filed a motion for leave to
 intervene in that case. Masterpiece, however, opposed
 Scardina's motion, arguing that any interest that she
 might have in the proceeding was merely incidental. The
 federal district court denied the motion, concluding that the
 Division could properly represent Scardina's interests.
 
 
          ¶78
 About one month later, the Division and Masterpiece reached a
 confidential settlement of the federal lawsuit. Scardina was
 not a party to that settlement, she apparently was not aware
 that it was occurring, and it appears that, to this day, the
 terms of the settlement have not been disclosed to her. Nor
 have they been disclosed to us.
 
 
          ¶79
 On March 5, 2019, presumably in accordance with the terms of
 the Division's and Masterpiece's settlement
 agreement, the Commission conducted an emergency meeting and
 decided to dismiss with prejudice its Notice of Hearing
 
 43
 
 and Formal Complaint in this matter. Scardina was not
 informed of this meeting until after it had occurred.
 
 
          ¶80
 That same day, the Attorney General filed a Notice of
 Dismissal and Petition for Administrative Closure, and two
 days later, the administrative law judge ("ALJ")
 assigned to this case issued an Order of Administrative
 Closure. In this Order, the ALJ noted that the Commission had
 voted to dismiss with prejudice its administrative complaint.
 Accordingly, after observing that "[t]here is . . . no
 need for any further proceedings before the Office of
 Administrative Courts," the ALJ administratively closed
 the matter and vacated the merits hearing that had been
 scheduled to begin on August 28, 2019.
 
 
          ¶81
 Two weeks later, on March 22, 2019, the Commission entered a
 Closure Order, recounting that the Commission had voted to
 dismiss its formal complaint and stating that the matter is
 now "formally closed." This order further declared,
 "[A]ll administrative proceedings under part 3 of
 article 34 of title 24, C.R.S. have been exhausted." At
 no time did Masterpiece or Phillips challenge the
 Commission's finding in this regard (or its right to make
 that finding), although before us, they have advanced a legal
 argument that Scardina did not, in fact, exhaust her
 administrative remedies.
 
 
          ¶82
 Scardina then filed the present lawsuit in the Denver
 District Court. Masterpiece and Phillips moved to dismiss on
 the ground that Scardina had failed
 
 44
 
 to exhaust her administrative remedies, but the district
 court denied that motion, and the case proceeded to a bench
 trial. At the conclusion of the trial, the court found that
 Masterpiece and Phillips had violated CADA by refusing to
 serve Scardina because of her transgender status. The court
 further found that enforcing CADA in the circumstances
 presented did not violate Masterpiece's or Phillips's
 rights to free speech or religious expression.
 
 
          ¶83
 Masterpiece and Phillips appealed, reiterating their argument
 that Scardina had failed to exhaust her administrative
 remedies and contending that their decision not to make the
 cake that Scardina had requested was based on their religious
 beliefs and their right to be free from compelled speech that
 would violate those beliefs. Scardina v. Masterpiece
 Cakeshop, Inc., 2023 COA 8, ¶¶ 1-2, 528 P.3d
 926, 930. In a unanimous, published opinion, a division of
 our court of appeals rejected Masterpiece's and
 Phillips's exhaustion argument and affirmed the district
 court's judgment on the merits. Id. at
 ¶¶ 1, 21-28, 93, 528 P.3d at 930, 933-34, 943.
 
 
          ¶84
 We then granted certiorari, and after receiving the
 parties' briefs and hearing their oral arguments, we
 requested supplemental briefing, asking the parties to file
 briefs addressing, among other things, "whether, given
 the deadlines set forth in the version of section 24-4-306,
 C.R.S. in effect at the relevant time, the district court had
 jurisdiction to hear Ms. Scardina's claim of
 discrimination." The
 
 45
 
 parties thereafter filed supplemental opening and answer
 briefs. None of these supplemental briefs raised or addressed
 the argument on which the majority today relies to conclude
 that the district court lacked the authority to decide this
 case. Instead, as pertinent here, Masterpiece and Phillips
 simply renewed their argument that Scardina had failed to
 exhaust her administrative remedies, and for that reason, the
 district court lacked the authority to hear this case.
 
 
          II.
 Analysis
 
 
          ¶85
 I begin with a brief discussion of the party presentation
 principle, and I note my concern regarding the majority's
 decision to dispose of this case based on an argument that no
 party has presented. I then address the majority's
 position regarding the district court's authority to hear
 this case, explaining why I believe that the district court
 had such authority. I end by addressing and rejecting the
 exhaustion argument that the parties presented, and I explain
 why I believe we should have reached the merits here.
 
 
          A.
 The Party Presentation Principle
 
 
          ¶86
 The Supreme Court has succinctly described the party
 presentation principle:
 
 
 In our adversary system, in both civil and criminal cases, in
 the first instance and on appeal, we follow the principle of
 party presentation. That is, we rely on the parties to frame
 the issues for decision and assign to courts the role of
 neutral arbiter of matters the parties present.... [A]s a
 general rule, "[o]ur adversary system is designed around
 the premise that the parties know what is best for them, and
 
 46
 
 are responsible for advancing the facts and arguments
 entitling them to relief."
 
 
          ¶87
 Greenlaw v. United States, 554 U.S. 237, 243-44
 (2008) (second alteration in original) (quoting Castro v.
 United States, 540 U.S. 375, 386 (2003) (Scalia, J.,
 concurring in part and concurring in the judgment)); accord
 United States v. Sineneng-Smith, 590 U.S. 371,
 375-76 (2020); Compos v. People, 2021 CO 19, ¶
 35, 484 P.3d 159, 165.
 
 
          ¶88
 The party presentation principle not only ensures that courts
 will exercise judicial restraint and maintain neutrality in
 deciding cases but also protects due-process interests by
 affording a party notice and a full and fair opportunity to
 be heard before a court decides an issue adversely to that
 party. See United States v. Campbell, 26 F.4th 860,
 895 (11th Cir. 2022) (Newsom and Jordan, JJ., dissenting).
 
 
          ¶89
 Here, as noted above, and as the majority concedes, Maj. op.
 ¶¶ 21, 49, Masterpiece and Phillips did not make
 the argument on which the majority relies, even after we
 issued an order requiring that they submit supplemental
 briefing addressing the district court's authority in
 light of the applicable statutes. In such a case, I believe
 that it is particularly important for a court not to raise
 and rely on arguments of its own derivation, so as not to
 open itself to questions about its proper role or neutrality.
 
 
          ¶90
 Nor do I believe that we can justify ruling on the basis of
 an argument that no one made by labeling the issue
 "jurisdictional." To be sure, when a question
 
 47
 
 exists as to our or a trial court's subject matter
 jurisdiction, we have an obligation to address it, even if
 the parties have not raised it or are prepared to concede
 jurisdiction. Bender v. Williamsport Area Sch.
 Dist., 475 U.S. 534, 541 (1986); People v.
 S.X.G., 2012 CO 5, ¶ 9, 269 P.3d 735, 737. This is
 because we must satisfy ourselves that we have jurisdiction
 to hear and act in a given case. S.X.G., ¶ 9,
 269 P.3d at 737.
 
 
          ¶91
 As the majority appears to acknowledge, however, Maj. op.
 ¶ 21 n.5, this case presents no question of either our
 or the district court's subject matter jurisdiction.
 "Subject matter jurisdiction concerns a court's
 authority to deal with the class of cases in which it renders
 judgment." Wood v. People, 255 P.3d 1136, 1140
 (Colo. 2011). A court has subject matter jurisdiction when
 the People or the legislature have empowered the court to
 entertain the type of case before it. Id. In this
 state, district courts are courts of general jurisdiction,
 and they have original jurisdiction in "all civil,
 probate, and criminal cases, except as otherwise
 provided" in the Colorado Constitution. Colo. Const.
 art. VI, § 9(1). Moreover, although the legislature may
 limit courts' subject matter jurisdiction, "such
 limitations must be explicit." Wood, 255 P.3d
 at 1140.
 
 
          ¶92
 Here, the Colorado Constitution granted the district court
 subject matter jurisdiction to hear this case. Moreover,
 nothing in CADA (or anywhere else) explicitly
 limited the district court's subject matter jurisdiction
 over this case.
 
 48
 
 Accordingly, in my view, this case does not implicate any
 question of the district court's subject matter
 jurisdiction. At most, it implicates that court's
 authority to enter a judgment within a class of cases that it
 was empowered to entertain. See People in Int. of J.W. v.
 C.O., 2017 CO 105, ¶¶ 24-25, 406 P.3d 853,
 858-59 (distinguishing between a court's subject matter
 jurisdiction over a class of cases and its authority to enter
 a particular judgment within that class, and noting that when
 a case falls within the class of cases that a court may hear,
 the court has subject matter jurisdiction over the case). I
 am aware of no authority, however, requiring us to raise, on
 our own, the issue of a court's authority to enter a
 judgment in a class of cases in which it has subject matter
 jurisdiction.
 
 
          ¶93
 Finally, I am unpersuaded by the majority's assertion
 that when we interpret a statute, we have an obligation to
 interpret the statute correctly, even if the party did not
 raise an issue regarding the matter on which the court
 decides to opine. Maj. op. ¶ 49. I understand and
 appreciate the majority's concern about issuing an
 opinion reciting an erroneous statutory construction. But
 here, because no party has asked us to opine on the issue
 that the majority raises on its own, addressing only the
 issues that the parties raised poses no risk of enshrining an
 erroneous construction of CADA into our case law. Indeed,
 because no party raised the issue on which the majority's
 decision rests, this case strikes me as a poor vehicle for
 addressing that issue. In addition, for the reasons that I
 discuss
 
 49
 
 below, I respectfully believe that it is the majority's
 interpretation that enshrines an error into law. And the
 majority's creation of what appears to be a
 duty-to-get-it-right exception to the party presentation
 principle (or an exception that allows the court to address
 any issue that it would like, as long as the party steered
 the court in a certain direction, id.) creates a
 substantial loophole in the party presentation principle and
 dramatically alters long-settled tenets of preservation and
 waiver. I would not adopt such exceptions, for fear that they
 will swallow the rule.
 
 
          ¶94
 For these reasons, I do not believe that it was appropriate
 for the majority to rule on the basis of an argument that no
 party presented, and for that reason alone, I respectfully
 dissent.
 
 
          B.
 The District Court Had the Authority to Hear This
 Case
 
 
          ¶95
 Even had I thought it appropriate for us to address the issue
 of the district court's authority that the majority
 raised and resolved on its own, I would conclude that the
 district court had the authority to entertain this case and
 to enter the judgment that it did.
 
 
          ¶96
 The majority concludes that once the Commission decides to
 hold an administrative hearing, Scardina could no longer file
 suit in district court. Maj. op. ¶¶ 6, 20.
 Accordingly, in the majority's view, after the Commission
 and Masterpiece settled the claim without Scardina's
 knowledge or consent and the
 
 50
 
 Commission dismissed the matter with prejudice and concluded
 that Scardina had exhausted her administrative remedies,
 Scardina's only option was to appeal the Commission's
 failure to enter a ruling on the merits of her claim.
 Id. at ¶¶ 6, 59. In my view, this
 conclusion is not supported by the text of CADA, and it is
 contrary to sound public policy.
 
 
          ¶97
 Section 24-34-306 expressly states when the jurisdiction of
 the Commission and of the district court come to an end.
 
 
          ¶98
 Specifically, section 24-34-306(2)(b)(I)(C) provides that
 "if the charging party does not file an action within
 the time limits specified in sub-subparagraph (B) of this
 subparagraph (I) [setting forth the deadlines by which a
 charging party must file a civil action after the Division
 makes a no probable cause determination], the action will be
 barred, and no district court shall have jurisdiction to
 hear the action." (Emphasis added.)
 
 
          ¶99
 Section 24-34-306(11), C.R.S. (2019), in turn, provided, at
 the time pertinent here:
 
 
 If written notice that a formal hearing will be held is not
 served within two hundred seventy days after the filing of
 the charge, if the complainant has requested and received a
 notice of right to sue pursuant to subsection (15) of this
 section, or if the hearing is not commenced within the
 one-hundred-twenty-day period prescribed by subsection (4) of
 this section, the jurisdiction of the commission over the
 complaint shall cease, and the complainant may seek the
 relief authorized under this part 3 and parts 4 to 7 of this
 article against the respondent by filing a civil action in
 the district court for the district in which the alleged
 discriminatory or unfair practice occurred. Such
 
 51
 
 action must be filed within ninety days of the date upon
 which the jurisdiction of the commission ceased, and if not
 so filed, it shall be barred and the district court shall
 have no jurisdiction to hear such action. If any party
 requests the extension of any time period prescribed by this
 subsection (11), such extension may be granted for good cause
 by the commission, a commissioner, or the administrative law
 judge, as the case may be, but the total period of all such
 extensions to either the respondent or the complainant shall
 not exceed ninety days each, and, in the case of multiple
 parties, the total period of all extensions shall not exceed
 one hundred eighty days.
 
 
 (Emphases added.)
 
 
          ¶100
 Here, as noted above, the Division found probable cause to
 support Scardina's claim, so section
 24-34-306(2)(b)(I)(C) does not apply, and that section did
 not deprive the district court of jurisdiction or of the
 authority to hear this case. In addition, it appears
 undisputed that the Commission timely served a notice of
 hearing and formal complaint, after several extensions that
 were expressly authorized by section 24-34-306(11), C.R.S.
 (2019); Scardina never requested or received a notice of a
 right to sue under that subsection; and the hearing was
 commenced within that subsection's 120-day time limit.
 Accordingly, none of these provisions operated to end the
 Commission's jurisdiction. Nor did they start the clock
 for filing a civil action in district court. As a result, in
 my view, the Commission retained jurisdiction until March 22,
 2019, when it dismissed Scardina's case with prejudice,
 concluded that she had exhausted her administrative remedies,
 and closed the matter. It is only then, at the earliest, that
 
 52
 
 the time for Scardina to file her lawsuit in the Denver
 District Court began to run, and she timely filed that action
 within ninety days.
 
 
          ¶101
 For several reasons, I am not persuaded otherwise by the
 majority's view that the district court lost (or could
 never obtain) the authority to hear this case once the
 Commission set a hearing on the merits of Scardina's
 claim.
 
 
          ¶102
 First, nothing in either CADA or its implementing regulations
 says any such thing. To the contrary, as noted above, CADA
 and its regulations expressly state when the jurisdiction or
 authority of the Commission and of the district court ceases
 or is precluded, and none of those provisions apply here. The
 majority nevertheless reads into these express (albeit
 inapplicable) limitations what it deems to be a further,
 implicit, limitation, namely, that section 24-34-306 provides
 the exclusive means by which a district court obtains the
 authority to hear a case like this. Maj. op. ¶¶ 48,
 54. The majority, however, offers no support for its view
 that an express limitation of authority somehow
 implies an exclusive grant of authority, and I have
 seen no law supporting such a position. To the contrary, in
 my view, the majority's novel interpretation flips the
 statutory language on its head.
 
 
          ¶103
 Second, the majority's conclusion is contrary to sound
 public policy. Under the majority's view, once the
 Commission issues a notice of hearing and complaint, it may
 never settle a claim and dismiss its own complaint,
 absent the charging
 
 53
 
 party's knowledge, participation, and consent.
 Id. at ¶ 40. Further, a charging party can
 force an administrative agency to proceed through a hearing
 and to a merits decision simply by stubbornly refusing to
 consent to a settlement, no matter how reasonable the agency
 acted on the facts before it. See id. I perceive
 nothing in CADA or its implementing regulations that so
 provides, and neither Masterpiece nor the majority cites any
 authority to support such an argument. Moreover, in my view,
 these outcomes would result in a substantial waste of
 administrative resources, and I cannot discern a legitimate
 policy rationale for such a result. Indeed, I expect that
 administrative agencies throughout Colorado will be quite
 surprised (and perhaps alarmed) to learn that their authority
 to settle actions has now been so significantly curtailed.
 
 
          ¶104
 Contrary to my colleagues in the majority, I would not adopt
 such a rule. Rather, I believe that sound public policy
 supports authorizing administrative agencies to resolve
 matters before them, even over a charging party's
 objection, and then allowing that party to pursue their claim
 in district court. Such a procedure best ensures a prompt
 result on the merits, which I believe is the end to which
 CADA and its implementing regulations are directed. See
 Brooke v. Rest. Servs., Inc., 906 P.2d 66, 71 (Colo.
 1995) (noting that CADA's primary purpose is to eliminate
 unfair or discriminatory practices defined in that statute).
 
 54
 
          ¶105
 Third, although the majority concludes that Scardina should
 have appealed from the Commission's order dismissing and
 closing her case, I do not believe that the law supports such
 a conclusion. Moreover, in my view, the court of appeals
 would not have had jurisdiction over any such appeal, and
 even if it did, it is not clear to me what that appeal would
 have entailed.
 
 
          ¶106
 Specifically, in support of its argument that Scardina should
 have filed an appeal in the court of appeals, the majority
 cites sections 24-34-307(1) and (2), C.R.S. (2017), which
 provide that a complainant aggrieved by "a final order
 of the commission, including a refusal to issue an order, may
 obtain judicial review thereof," with such review to be
 sought in the court of appeals. Maj. op. ¶ 36. As the
 majority appears to acknowledge, however, the
 Commission's order was not a final order.
 See id. at ¶¶ 57-59. Indeed, the gist of
 the majority's ruling appears to be that Scardina should
 have appealed to the court of appeals precisely because she
 never received a final order on the merits from the
 Commission. See id. at ¶ 59. Nor do I agree
 that the Commission's order was a "refusal to issue
 an order." See id. The Commission did
 issue an order, namely, an order dismissing the case and
 concluding that Scardina had exhausted her administrative
 remedies, thereby ending the matter. Accordingly, I do not
 believe that sections 24-34-307(1)-(2) support the
 majority's position here.
 
 55
 
          ¶107
 In any event, because the Commission's dismissal and
 closure orders were not final orders, the court of appeals
 would not have had jurisdiction to hear an appeal had
 Scardina filed one.
 
 
          ¶108
 In this regard, I believe that Demetry v. Colorado Civil
 Rights Commission, 752 P.2d 1070 (Colo.App. 1988), which
 has been on the books for nearly forty years, is directly on
 point. In that case, the director of the Division found no
 probable cause to sustain Demetry's charge of
 discrimination, the Commission affirmed, and Demetry
 appealed. Id. at 1070. Although the no probable
 cause determination and the Commission's decision to
 affirm that determination ended all of the administrative
 proceedings in that case, the Commission contended that its
 decision to affirm the no probable cause determination did
 not constitute final agency action subject to appellate
 review and thus, the court of appeals division lacked
 jurisdiction over Demetry's appeal. Id. at 1071.
 The division agreed. Id.
 
 
          ¶109
 The division so concluded notwithstanding the fact that the
 charging party was a complainant who was obviously aggrieved,
 id., as the majority says Scardina was here, Maj.
 op. ¶ 36. The division reasoned that "[f]or an
 order to be final, it must have some determinative
 consequences for the party to the proceeding."
 Demetry, 752 P.2d at 1071. In other words,
 "[t]he order must establish the rights and obligations
 of the parties." Id.
 
 56
 
          ¶110
 In support of this conclusion, the division looked to federal
 case law construing Title VII of the Civil Rights Act of 1964
 and observed that the purpose of any investigation by the
 federal Equal Employment Opportunity Commission
 ("EEOC") was "merely preparatory to further
 proceedings." Id. at 1071-72. Thus, the
 division opined, if the EEOC finds no probable cause, then
 the charging party may bring a private cause of action.
 Id. at 1072.
 
 
          ¶111
 The division found this reasoning to be equally applicable to
 the CADA claim before it. Id. Specifically, the
 division observed that the Commission's decision not to
 prosecute Demetry's discrimination charge
 administratively bore "no indicia of a final order.
 There has been no hearing on, or adjudication of, the merits
 of the charge, nor has there been a determination of the
 legal rights of the employer and employee." Id.
 Thus, because there had been no final decision that would
 afford the court of appeals division jurisdiction to hear the
 matter, the Commission's decision did not affect
 Demetry's right to bring an action in district court
 under section 24-34-306(11), C.R.S. (2019). See
 Demetry, 752 P.2d at 1072.
 
 
          ¶112
 In my view, the same reasoning applies in this case. Here, as
 in Demetry, the Commission's dismissal and
 closure orders did not determine the legal rights of either
 Masterpiece or Scardina. Nor did those orders bear any
 indicia of finality because, as in Demetry, there
 had been "no hearing on, or adjudication of, the merits
 of the charge." Id.
 
 57
 
          ¶113
 Accordingly, Scardina could not have pursued the appeal to
 the court of appeals that the majority says she should have
 filed because that court would not have had jurisdiction to
 hear such an appeal.
 
 
          ¶114
 In so concluding, I am not persuaded otherwise by
 Masterpiece's and Phillips's reliance on Agnello
 v. Adolph Coors Co., 689 P.2d 1162 (Colo.App. 1984)
 ("Agnello I"), and Agnello v. Adolph
 Coors Co., 695 P.2d 311 (Colo.App. 1984)
 ("Agnello II"). In those related cases,
 Agnello had filed a charge alleging that Coors had
 discriminated against her because of a physical handicap.
 Agnello I, 689 P.2d at 1164. The Division found
 probable cause, and conciliation was commenced under CADA.
 Id. There, unlike here, the conciliation process was
 successful and resulted in an agreement between
 Coors and the Division by which an independent physician
 would determine Agnello's capabilities for the position
 for which she had applied. Id. Although Agnello
 apparently did not consent to be bound by this determination,
 she agreed to cooperate and participate in the independent
 physician's evaluation. Id. Ultimately, the
 physician made a determination adverse to Agnello, she
 objected to that determination, and the matter was referred
 back to the director, who found that Coors's actions
 satisfied its obligations under the conciliation agreement
 and CADA. Id.
 
 
          ¶115
 Agnello then appealed to the Commission, which approved and
 confirmed the agreement, finding that the process to which
 the Division and Coors had
 
 58
 
 agreed was proper and did not ignore CADA's protections
 for persons with disabilities. Id. Agnello then
 appealed to the court of appeals, which accepted
 jurisdiction. Id.; see also Agnello II, 695
 P.2d at 313 (noting that because the conciliation efforts
 under CADA were successful, the district court could not
 acquire jurisdiction and an independent action based on the
 alleged CADA violation could not be brought).
 
 
          ¶116
 In my view, Agnello I and Agnello II are
 nothing like the present case. There, unlike here, the
 conciliation process was successful. Moreover, there, unlike
 here, the charging party participated in the conciliation
 process, although she did not agree to be bound by it. Here,
 in contrast, the settlement at issue was kept secret from
 Scardina. Indeed, Masterpiece and Phillips expressly resisted
 Scardina's intervention in the federal action before
 settling that action without providing Scardina with either
 notice or an opportunity to be heard. And unlike here, the
 conciliation process and review by the Commission in
 Agnello I and Agnello II resulted in a
 decision on the merits finding no discrimination.
 Accordingly, the administrative process in those cases
 indisputably resulted in a final order over which the court
 of appeals division could exercise jurisdiction.
 
 
          ¶117
 Even if Scardina could have appealed and the court of appeals
 could have exercised jurisdiction over such an appeal,
 however, it is not clear to me what such an appeal would have
 entailed. Under the majority's apparent view, Scardina
 
 59
 
 would effectively have been forced to appeal the confidential
 settlement agreement between the Division and Masterpiece, in
 which she was not involved and which presumably required the
 dismissal of the charge at issue. This, in turn, would have
 forced Scardina to challenge the terms of that settlement
 agreement, even though she has never seen it.
 
 
          ¶118
 On this point, I take no comfort in an argument that Scardina
 can appeal the fact that the Commission dismissed and closed
 her case without her knowledge, participation, and consent
 and without issuing a ruling on the merits. For the reasons
 set forth above, I perceive no statutory basis for an
 argument that once the Commission sets a hearing on the
 merits, it can never settle over the charging party's
 objection and must instead proceed through the hearing and
 issue a ruling on the merits. Moreover, I am not convinced
 that the question that the majority believes Scardina should
 have raised on appeal necessarily involves a purely legal
 issue, as the majority seems to assume. See Maj. op.
 ¶¶ 36, 59. Rather, I believe that the question may
 well implicate the facts and circumstances leading to the
 settlement agreement and the terms of that agreement.
 Scardina, as a stranger to that agreement, however, would
 have had no ability to address those issues in an appeal of
 the Commission's Closure Order.
 
 
          ¶119
 For all of these reasons, I would conclude that the district
 court, in fact, had jurisdiction and the authority to
 consider Scardina's claim.
 
 60
 
          ¶120
 The question for me thus becomes whether Scardina exhausted
 her administrative remedies and, if not, whether any failure
 to do so constituted a jurisdictional default. These are the
 procedural issues that the parties actually litigated before
 us, and I turn to them next.
 
 
          C.
 Scardina Exhausted Her Administrative Remedies
 
 
          ¶121
 As an initial matter, I acknowledge our prior case law
 stating, albeit with limited or no analysis, that the failure
 to exhaust administrative remedies is jurisdictional.
 See, e.g., Thomas v. Fed. Deposit Ins.
 Corp., 255 P.3d 1073, 1077 (Colo. 2011); State v.
 Golden's Concrete Co., 962 P.2d 919, 923 (Colo.
 1998). Although I question whether those cases are correct on
 that point, see Santos-Zacaria v. Garland, 598 U.S.
 411, 417 (2023) ("Exhaustion is typically
 nonjurisdictional ...."); see also Wood, 255
 P.3d at 1140 ("Although the legislature has the power to
 limit courts' subject matter jurisdiction, we have held
 that such limitations must be explicit."), I need not
 reach that question here because I believe that Scardina
 exhausted her administrative remedies, as the Commission
 expressly found in its Closure Order. (Notably, neither
 Masterpiece nor Phillips has ever challenged the
 Commission's finding in this regard, which apparently was
 a byproduct of the settlement to which Masterpiece and
 Phillips had agreed. Accordingly, I believe that there are
 legitimate grounds to conclude that Masterpiece and Phillips
 waived any argument that Scardina had failed to exhaust her
 administrative remedies. For
 
 61
 
 purposes here, however, I will assume without deciding that
 they did not waive this argument, and I will address it on
 its merits.)
 
 
          ¶122
 At the time relevant here, section 24-34-306(14), C.R.S.
 (2019), provided, in pertinent part, "No person may file
 a civil action in a district court in this state based on an
 alleged discriminatory or unfair practice prohibited by parts
 4 to 7 of this article without first exhausting the
 proceedings and remedies available to him under this part
 3," subject to exceptions not applicable in this case.
 (The legislature has since excluded claims of discrimination
 in public accommodations from the list of claims for which
 administrative remedies must be exhausted. See Ch.
 271, sec. 1, § 24-34-306(14), 2023 Colo. Sess. Laws
 1613, 1613.)
 
 
          ¶123
 Here, I believe that our analysis of the exhaustion question
 is quite simple because the Commission itself found in its
 March 22, 2019 Closure Order, "[A]ll administrative
 proceedings under part 3 of article 34 of title 24, C.R.S.
 have been exhausted." As noted above, neither
 Masterpiece nor Phillips has ever challenged this finding,
 and I do not believe that it is appropriate for them to rely
 on those portions of the Commission's dismissal and
 closure orders that they like while ignoring those portions
 that they do not. In addition, I perceive no basis on which
 to contest the Commission's conclusion that its own
 administrative proceedings have been exhausted. For this
 reason alone, I would conclude that Scardina exhausted her
 administrative remedies.
 
 62
 
          ¶124
 Even were there a viable question as to whether Scardina had
 exhausted these remedies, however, I would conclude that she
 did so.
 
 
          ¶125
 "The doctrine of administrative exhaustion requires a
 party to pursue available statutory administrative remedies
 before obtaining judicial review of a claim."
 Thomas, 255 P.3d at 1077. This doctrine (1) promotes
 "the efficient use and conservation of judicial
 resources, by ensuring that courts intervene only if the
 administrative process fails to provide adequate
 remedies"; and (2) "enables an agency to make
 initial determinations on matters within its expertise,
 identify and correct its own errors, and develop a factual
 record that will benefit the court if satisfactory resolution
 cannot be reached through the administrative process."
 Id.
 
 
          ¶126
 Here, the administrative proceeding itself indisputably came
 to an end when the Commission entered its dismissal and
 closure orders. The question thus becomes whether Scardina
 failed to exhaust her administrative remedies by not
 appealing those orders to the court of appeals. For the
 reasons set forth above, I do not believe that the court of
 appeals had jurisdiction to consider such an appeal, nor do
 CADA or its implementing regulations require an appeal in
 these circumstances. Accord Maj. op. ¶¶
 21, 42 n.8. Accordingly, in my view, there was nothing
 further for Scardina to do to exhaust her administrative
 remedies, and for the reasons set forth in Demetry,
 752 P.2d at 1072, I believe that she was entitled to proceed
 to file a claim in district court.
 
 63
 
          III.
 Conclusion
 
 
          ¶127
 Because (1) I do not believe that it was proper for the
 majority to conceive, develop, and then dispose of this case
 based on an argument that no party presented; (2) I believe
 that the district court had jurisdiction and the statutory
 authority to hear this case; and (3) Scardina exhausted her
 administrative remedies, I would reject Masterpiece's and
 Phillips's procedural challenges and reach the merits of
 this case.
 
 
          ¶128
 For these reasons, and because I have significant concerns
 about the substantive and procedural consequences of the
 majority's ruling, I respectfully dissent.
 
 
 ---------
 
 
 Notes:
 
 
 [1] We granted certiorari to review the
 following issues:
 
 
 1. Whether Scardina's CADA claim is barred because
 Scardina did not appeal the Commission's dismissal of the
 administrative complaint before suing Masterpiece Cakeshop
 Inc. and Phillips.
 
 
 2. Whether the decision by Masterpiece Cakeshop Inc.
 and Phillips not to create a pink cake with blue frosting
 that was to be used to celebrate a gender transition violated
 CADA's prohibition on transgender-status
 discrimination.
 
 
 3. Whether the decision by Masterpiece Cakeshop Inc.
 and Phillips not to create a pink cake with blue frosting
 that was to be used to celebrate a gender transition was
 protected by the First Amendment.
 
 
 [2] Though section 24-34-306(14) still
 requires administrative exhaustion for most CADA claims, an
 amendment in 2023 excluded claims of discrimination in places
 of public accommodation from this requirement. Ch. 271, sec.
 1, § 24-34-306(14), 2023 Colo. Sess. Laws 1613,
 1613.
 
 
 [3] In addition to triggering deadlines
 for both of the administrative agencies responsible for
 handling these claims, the filing of a charge of
 discrimination with the Division also started the clock on a
 180-day period during which Scardina was required to maintain
 her charge in the administrative process and could not seek
 to pursue a claim in district court. However, 180 days after
 she filed her charge with the Division, she was entitled to
 request and receive a right to sue letter and to file a claim
 in district court, so long as the Commission had not yet
 issued a Notice of Hearing. § 24-34-306(11),
 (15).
 
 
 [4] These extensions are not explicitly
 documented in the record, but the district court's
 findings of fact conclude that "[b]oth parties requested
 jurisdictional extensions of time, ultimately extending the
 [Division]'s jurisdiction until October 13, 2018."
 This finding is supported by an exchange at trial between the
 court and Scardina's counsel, in which counsel provided
 the judge with documents indicating that the extensions were
 granted. Because it is supported by the record, we defer to
 the trial court's factual finding regarding these
 extensions. See People v. Johnson, 2024 CO 47,
 ¶ 22, 549 P.3d 1008, 1014 ("We accept and defer to
 a court's factual findings unless they are clearly
 erroneous or draw no support from competent evidence in the
 record.").
 
 
 [5] We need not decide whether section
 24-34-306's constraint on when a district court may hear
 a CADA claim is "jurisdictional"; we need only
 determine whether section 24-34-306 imposes limits,
 regardless of their character, that would vindicate
 Masterpiece's assertion that the district court could not
 properly hear Scardina's claim. Thus, to the extent we
 use the term 'jurisdiction' throughout this opinion,
 we refer only to the language of section 24-34-306 and do not
 intend to invoke the underlying legal significance of this
 term.
 
 
 [6] Though they are both tasked with
 enforcing CADA, the Division and the Commission are distinct
 entities that engage with a discrimination complaint at
 different stages of the procedures described in section
 24-34-306. See § 24-1-122(2)(h), C.R.S. (2024)
 (listing the Division and the Commission as separate entities
 within Colorado's Department of Regulatory Agencies);
 see also Colo. Civ. Rts. Div., The Complaint
 Process, https://ccrd.colorado.gov/the-complaint-process
 [https://perma.cc/3UUD-XSU8] ("The Commission is a
 separate and distinct body from the Colorado Civil Rights
 Division.").
 
 
 [7] The "charges" that the
 notice and complaint require the respondent to answer are the
 charges filed by the "person claiming to be aggrieved by
 a discriminatory or an unfair practice." §
 24-34-306(1)(a)(I).
 
 
 [8] Masterpiece argues that section
 24-34-306(14)'s exhaustion requirement mandated that
 Scardina pursue her right to appeal pursuant to section
 24-34-307 before filing a district court suit because the
 provision on judicial review and enforcement is included
 within "this part 3." We disagree. True, section
 24-34-307 is included in Part 3 of Title 24. But subsection
 306(14) explicitly limits its exhaustion requirement to
 "administrative remedies." The right to review of
 agency decisions in the court of appeals, as described by
 section 24-34-307, is not a part of administrative remedies,
 but rather is a separate appellate right.
 
 
 [9] We refer to this process under
 subsection 306(15) as the earliest moment a claim can move
 from administrative review to district court because of the
 time the administrative review often takes. In this case, for
 example, the Division issued its probable cause finding more
 than a year after Scardina filed her initial claim. The
 Commission served its notice of a formal hearing almost 450
 days after Scardina filed her initial claim. CADA entitled
 Scardina to request a right to sue letter, moving from the
 administrative process to the district court, at any time
 from 180 days after she filed her claim with the Division up
 until the day that the Commission took up the claim by
 serving notice of the formal hearing.
 
 
 [10] The current version of section
 24-34-306 has eliminated the possibility of extensions and
 simply sets the timeline at 450 days. § 24-34-306(11),
 C.R.S. (2024).
 
 
 ---------